11th Court of Appeals
Eastland, Texas
Opinion
 
Jessie Medrano, Jr.
            Appellant
Vs.                  No. 11-03-00224-CR – Appeal from Scurry County
State of Texas
            Appellee
 
            Jessie Medrano, Jr. appeals the revocation of his community supervision. Appellant was
originally convicted, upon his plea of guilty, of violating a protective order by committing family
violence against his first wife. Pursuant to a plea bargain agreement, the trial court sentenced
appellant to confinement for 10 years and a $750 fine and ordered that he participate in the Special
Alternative Incarceration Program (SAIP), also called boot camp. The trial court later granted
appellant’s motion for placement on shock probation after SAIP participation, suspended the original
sentence, and placed appellant on community supervision for 10 years. After a hearing on the State’s
motion to revoke, the trial court found the allegation that appellant intentionally, knowingly, or
recklessly caused bodily injury to Sheenette Sanchez by choking her and striking her about the head,
face, and body to be true. The trial court then revoked appellant’s community supervision and
imposed a sentence of confinement for 10 years. We affirm.
Contentions on Appeal
            In his first issue, appellant argues that the evidence to support the trial court’s finding that
he violated the terms and conditions of his community supervision is both legally and factually
insufficient. Appellant contends that, because he and the victim were the only witnesses and because
both he and the victim testified that he did not hit the victim, the State failed to prove by a
preponderance of the evidence that appellant committed the offense of assault. Appellant contends,
therefore, that the trial court abused its discretion.
            In his second issue, appellant contends that the trial court erred in allowing Snyder Police
Officer Mike Ward to testify. Because Officer Ward did not have a warrant, appellant argues that
Officer Ward’s arrest of appellant violated Chapter 14 of the Texas Code of Criminal Procedure and
that Officer Ward’s testimony should have been excluded.
Applicable Standards of Review
            In a community supervision revocation hearing, the State has the burden of proving by a
preponderance of the evidence that a condition of community supervision has been violated. Jenkins
v. State, 740 S.W.2d 435 (Tex.Cr.App.1983). The trial court is the trier of the facts and determines
the weight and credibility of the testimony. Garrett v. State, 619 S.W.2d 172 (Tex.Cr.App.1981);
Barnett v. State, 615 S.W.2d 220 (Tex.Cr.App.1981). Appellate review of an order revoking
community supervision is limited to the issue of whether the trial court abused its discretion. 
Flournoy v. State, 589 S.W.2d 705 (Tex.Cr.App.1979). 
            Appellant seeks to extend the factual insufficiency standard of review found in Clewis v.
State, 922 S.W.2d 126 (Tex.Cr.App.1996), to appellate challenges to the sufficiency of the evidence
in revocation proceedings. This argument has previously been rejected. Becker v. State, 33 S.W.3d
64 (Tex.App. - El Paso 2000, no pet’n); Allbright v. State, 13 S.W.3d 817 (Tex.App. - Fort Worth
2000, pet’n ref’d); Joseph v. State, 3 S.W.3d 627 (Tex.App. - Houston [14th Dist.] 1999, no pet’n);
Liggett v. State, 998 S.W.2d 733 (Tex.App. - Beaumont 1999, no pet’n); Johnson v. State, 943
S.W.2d 83 (Tex.App. - Houston [1st Dist.] 1997, no pet’n); Brumbalow v. State, 933 S.W.2d 298
(Tex.App. - Waco 1996, pet’n ref’d).
Evidence at Revocation Hearing
            Officer Ward testified that he was dispatched after midnight to a residence to check on the
welfare of a female. Someone had called dispatch to report an argument between the victim and
appellant and to request that an officer check on the victim. When Officer Ward was outside in the
front yard of the residence, he heard loud arguing coming from inside the residence. While on the
front porch, he could tell that the arguing was coming from a room to the left of the front door.
Officer Ward knocked on the front door. He heard a female “scream” out: “God, someone help me!” 
The doorknob was unlocked; however, the door would not open. The female was “continually”
screaming: “Stop. Help.” Officer Ward forced the door open and entered the dark living room. The
screaming continued. 
            Officer Ward drew his duty weapon, pulled out a flashlight, entered the hallway, and moved
toward the screaming. In a bedroom on the left, Officer Ward saw the victim on the floor at the foot
of the bed. She was in “a fetal type position, curled up in a ball.” She was still screaming. Appellant
was standing over the victim with his fists clinched. Officer Ward could tell that appellant was
“agitated.” Appellant was standing within striking and kicking distance of the victim. When Officer
Ward told appellant to get on the floor, appellant moved to the floor and put his hands out. 
            Officer Ward told appellant that he was going to secure appellant in his patrol car until he
could “figure out what was going on.” Appellant told Officer Ward: “We were just wrestling.” 
Officer Ward observed no injuries to appellant. 
            Officer Ward returned to the bedroom and found the victim sitting at the foot of the bed,
crying, and screaming. Her screams stopped only when he removed her from the bedroom. The
victim had numerous dark red marks around her neck and face. Her left forearm had marks, and
there were cuts and abrasions on her face and hands. The marks appeared to be fresh. The victim
was traumatized. She said that she was sleepy and acted like she was losing consciousness. The
victim was not coherent. She refused an ambulance, repeatedly told Officer Ward “that it was dark,”
and asked him to call her mother.
            When the victim stated that she could not breathe and that her head hurt, Officer Ward called
an ambulance. Officer Ward thought that the victim had been choked and that she needed medical
attention because she was having trouble breathing. Officer Ward photographed the victim before
the ambulance arrived, and those photographs were introduced into evidence. 
             Officer Ward testified that he smelled alcohol on the victim and that appellant had a “faint”
odor of alcohol about him. In the bedroom, Officer Ward found “two pieces” of a cordless phone. 
The victim told Officer Ward that she had been living with appellant for two months. 
            Stacey Lee Garcia testified that she was the victim’s friend. Garcia had called the victim
earlier in the day to wish her a happy birthday. Later that night, the victim’s cousin called Garcia
because the victim wanted to talk to Garcia. The victim told Garcia that she was upset because
appellant had left their house. The victim was originally speaking in a regular voice but then began
to whisper. The victim told Garcia that appellant had returned. Garcia could hear appellant in the
background. At first, his voice was “normal” but, then, it became louder and louder until he was
yelling. Appellant was calling the victim a b---h and telling her to get off of the f-----g phone. 
Garcia stated that appellant used the “b” word and the “f” word many times. Garcia told the victim
that, if she heard appellant do anything to the victim, she would call the police. The victim told
Garcia that she was going to go to her mother’s house. Garcia said that she would wait ten minutes
before calling the victim’s mother’s house and that, if the victim was not there, then Garcia was
going to call the police. Garcia waited ten minutes and called the victim’s mother. When she
discovered that the victim was not there, Garcia called the police.
            Garcia went to the victim’s home after the police called her back. The victim was leaving
her home. She was walking “real slow” and was bent over like she was out of breath and in pain. 
Garcia saw marks on the victim’s neck and on her face. Garcia stated that the victim did not sound
like she had been drinking on the phone. Garcia testified that she did not know if the victim had
been drinking that day. 
            Helbera Sanchez testified that she was the victim’s mother. The victim had come by her
home the afternoon of the victim’s birthday and had left her one-year-old son to allow the victim and
appellant to go out to eat. The victim was “dressed to go somewhere,” and she looked sad. Helbera
did not see any scrapes or cuts on her daughter’s face at that time. Her lips were not swollen, and
she did not have any injuries to the top of her head. Helbera looked at the photos that were admitted
into evidence and testified that the victim did not look like that when she dropped her son off. 
Helbera also stated that the victim did not usually wear heavy makeup and that she was not wearing
heavy makeup at that time. 
            Later that night after the police called, Helbera went to her daughter’s house and found her
“all bruised up and crying.” Helbera stated that Officer Ward’s photos reflected how her daughter
looked that night. Helbera went with the victim to the hospital. The victim told her mother in the
hospital that appellant had had her pinned down and that she could not defend herself. While he was
choking her, appellant told her to “[d]ie.” When the police came, appellant told the victim to say
that they had been wrestling. Although Helbera did not smell alcohol on her daughter, she assumed
that the victim “had some liquor in her.” 
            Nanette Sanchez, the victim’s oldest sister, testified that she saw the victim on the afternoon
of her birthday. The victim looked fine. Nanette stated that Officer Ward’s photos depicted how
the victim looked in the hospital after the incident. 
            Debi Guzman testified that she was the charge nurse when the victim was admitted to the
hospital. Guzman remembered the victim because she “had not seen an assault that bad in quite a
while, several years.” Guzman did the initial assessment of the victim and then assigned her to
another nurse. Guzman instructed the nurse to watch for increased swelling in the victim’s neck
which could potentially close off her airway. The victim complained of pain in her neck and her
finger. She also had a headache. 
            The victim testified that she began dating appellant when she was 15, that the incident
occurred on her 18th birthday, and that she was living with appellant at the time. The victim stated
that she married appellant about a month after the incident. The victim had been celebrating her
birthday by drinking and “trying to have a good time on [her] own.” She was drinking with her
cousin. Appellant was there but was not drinking. She remembered that Garcia called before
midnight. The victim stated that she was drunk and that she told Garcia that she had argued with
appellant earlier that day. She was not scared when she was on the phone with Garcia. She did not
use the phone after Garcia’s call because she got frustrated and threw the phone at appellant. The
victim stated that, about 20 days before the incident, she had broken the phone by dropping it. 
             She started to punch appellant with her fists after she threw the phone at him. She was trying
to hit him anywhere she could. Appellant told her that he did not want to fight with her, that he was
tired, and that he wanted to go to bed. Appellant slapped her “to get [her] attention.” It did not hurt. 
The victim testified that she had gotten all the marks and bruises from a fight with a girl two days
before her birthday, that she had covered them up with makeup, and that she was not in pain when
her mother saw her that night. She stated that she did not tell anyone that her head hurt or that she
could not breathe. She further stated that she did not tell her sister that appellant had said: “Die”
and “I hope you die” while he was choking her. 
            Appellant testified that, after he took the victim out to eat on her birthday, he asked her to
drop him off at their home while she went to her cousin’s home. The victim was gone for a long
time. When she came home, he smelled alcohol on her breath. He was upset and told her that he
could not be around someone who was drunk. Appellant went into another room to watch TV.
            A little before 10:00 p.m., appellant and the victim began to argue. Appellant wanted to
leave to take his cousin Ruben Silva home. The victim did not want appellant to leave. They argued
for about 30 minutes in front of appellant’s cousin. Finally, the cousin left.
            Appellant testified that he could not handle the way the victim was acting so he walked out
of the room toward the bedroom. The victim started to attack him. She hit him with her hands and
then her fists. Appellant went into the bedroom, and the victim kept hitting him and kicking him. 
She threw the phone at him and missed. The victim came at him hitting, and he put his hands up to
stop her. She then started scratching him. He struggled for about 15 minutes to calm her down. 
Finally, he grabbed her, and she butted him with her head. Appellant testified that the victim was
“wild.” He grabbed her from behind, and she “snapped out of it” and calmed down. 
            The next thing appellant knew Officer Ward was coming down the hallway with a flashlight. 
Appellant asked Officer Ward why he was there and why was he arresting him. Appellant stated that
Officer Ward said: “[W]e got a call.” 
            Appellant testified that he did not intentionally hit the victim in her face with his hand. He
also stated that, two days before the victim’s birthday, she came home “a little beat up.” Appellant
testified that he did not assault the victim, that he might have slapped her to calm her down, that he
was just defending himself, and that the victim was a stumbling drunk at the time. 
Trial Court’s Finding
            The trial court found that appellant violated the terms and conditions of his community
supervision by committing the offense of assault. Appellant contends that, because no third party
witnessed what occurred between the victim and appellant, the State failed in its burden of proof. 
We disagree.
            All of the evidence must be reviewed. The State is required to prove a violation by a
preponderance of the evidence, not to prove a violation beyond a reasonable doubt or by only
eyewitness testimony. Jenkins v. State, supra; Becker v. State, supra; Allbright v. State, supra;
Joseph v. State, supra; Liggett v. State, supra; Johnson v. State, supra; Brumbalow v. State, supra.
            Although appellant and the victim both denied that appellant assaulted the victim in any
manner and both testified that the marks on the victim’s neck and face were from a fight two days
before her birthday, Officer Ward, the victim’s mother, the victim’s sister, and the charge nurse
testified that the marks were fresh or recent. The victim’s mother and sister also testified that, earlier
in the afternoon on her birthday, the victim did not have any marks or bruises. As the fact finder,
the trial court could accept or reject any or all of a witness’s testimony. Garrett v. State, supra.
            The record reflects that the trial court did not abuse its discretion. The first issue is overruled.
Admissibility of Officer Ward’s Testimony
            Appellant contends that, without a warrant, Officer Ward’s entry into his home and his
subsequent arrest were illegal. Therefore, the trial court should have excluded Officer Ward’s
testimony. We disagree.
            TEX. CODE CRIM. PRO. ANN. art. 14.01(b) (Vernon 1977) provides that:
            A peace officer may arrest an offender without a warrant for any offense
committed in his presence or within his view. (Emphasis added)
                  
While standing on the front porch in answer to a call to check on the welfare of a female at the
residence, Officer Ward heard a female scream from inside the home, “God, someone help me!” 
There had been no response to his knock on the door. As he tried to open the door, the woman
continued to scream: “Stop. Help.” Officer Ward heard an offense being committed within his
presence. Pursuant to Article 14.01(b), Officer Ward was authorized to investigate the situation and
arrest appellant.
            The trial court did not err in admitting Officer Ward’s testimony. The second issue is
overruled.
This Court’s Ruling
            The judgment of the trial court is affirmed.
 
                                                                                    TERRY McCALL
                                                                                    JUSTICE
April 15, 2004
Do not publish. See TEX.R.APP.P. 47.2(b).
Panel consists of: Arnot, C.J., and
Wright, J., and McCall, J.