Billie Daniel BRUMBALOW, Appellant,

v.

The STATE of Texas, Appellee.

No. 10–96–034–CR.

Court of Appeals of Texas,
Waco.

Oct. 16, 1996.

Rehearing Overruled Nov. 13, 1996.

Martin Peterson, Stephenville, for appellant.

Andy J. McMullen, District Attorney, Ben L. Stool, Asst. District Attorney, Hamilton, for appellee.

Before DAVIS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

VANCE, District Judge.

Billie Daniel Brumbalow appeals from a revocation of community supervision. Tex. Code Crim.Proc.Ann. art. 42.12, § 21 (Vernon Supp.1996). In October 1993, Brumbalow pled guilty to the offense of indecency with a child and was sentenced to ten years in prison. Tex.Penal Code Ann. § 21.11 (Vernon 1994). The court suspended the sentence and placed him on community supervision. In September 1995, the State filed a "motion to revoke" based on allegations that Brumbalow had exposed his genitals to J.M., an eleven-year-old girl. After a hearing, the court revoked his community supervision.

Brumbalow appeals on two points, asserting that the evidence is insufficient to support the court's revocation and that the court erred in refusing to permit him to question J.M.'s grandfather as to the girl's character for truthfulness. We will affirm the judgment.

## STANDARD OF REVIEW

In his first point, Brumbalow asserts that the court abused its discretion in finding that he had violated the conditions of his community supervision by exposing his genitals with the specific intent to arouse or gratify the sexual desire of any person. Brumbalow argues that we should review the court's finding in light of *Clewis v. State,* 922 S.W.2d 126 (Tex.Crim.App.1996). We disagree.

In a revocation proceeding, the State must prove by a preponderance of the evidence that the defendant violated the terms of community supervision. *Cobb v. State,* 851 S.W.2d 871, 873 (Tex.Crim.App.1993). Appellate review of an order revoking community supervision is limited to a determination of whether the court abused its discretion. *Cardona v. State,* 665 S.W.2d 492, 493 (Tex. Crim.App.1984). Historically, we have reviewed for abuse of discretion by examining the evidence from the revocation hearing in the light most favorable to the court's findings. *Hill v. State,* 719 S.W.2d 199, 201 (Tex.Crim.App.1986) (court of appeals erred in reviewing affirmative defense of inability to pay fees and costs by great weight and preponderance); *Jackson v. State,* 645 S.W.2d 303, 305 (Tex.Crim.App.1983); *Garrett v. State,* 619 S.W.2d 172, 174 (Tex.Crim. App. [Panel Op.] 1981).

In 1990, however, the Court of Criminal Appeals determined that the courts of appeals have authority to determine whether a *jury finding* on an affirmative defense to the merits of the offense is against the great weight and preponderance of the evidence. *Meraz v. State,* 785 S.W.2d 146, 154 (Tex. Crim.App.1990). More recently, the Court has held that, under Article V, section 6 of the Texas Constitution, the courts of appeals have a duty to review the factual sufficiency of the elements of the offense "without the prism of 'in the light most favorable to the prosecution'" when presented with a properly preserved point of error. *Clewis,* 922 S.W.2d at 129.

So far, the Court has applied *Clewis* only to our review of the verdict, *i.e.,* the elements

of the offense.[1] Will the Court ultimately hold that the fact jurisdiction of the courts of appeals extends to *all* factual determinations made during the course of a criminal proceeding? Or will it be limited to a review of the factual determinations made by the jury or court that are reflected by the verdict after trial? If the Court extends *Clewis*, many of the standards by which we review rulings made by the court before or after "trial" will be changed to reflect a duty to review the facts that form the basis of the ruling.[2]

Because the Court has not extended *Clewis* to ancillary rulings, we decline to do so. We have previously held that sufficiency points are not independent grounds of error, but are incorporated into the determination of whether the court abused its discretion. *Ashcraft v. State*, 918 S.W.2d 648, 655 (Tex. App.–Waco 1996, pet. ref'd) (adopting the reasoning of *Thomas v. Thomas*, 895 S.W.2d 895, 896 (Tex.App.–Waco 1995, writ denied)). We see no reason why *Clewis* changed the method whereby we review determinations of fact made incident to rulings such as the one now under review.

■ The State's burden at a revocation hearing remains the same: Proof by a preponderance of the evidence that Brumbalow violated a condition of his community supervision. *Cobb*, 851 S.W.2d at 873. Likewise, our appellate review remains the same: Did the court abuse its discretion in revoking Brumbalow's community supervision? *Cardona*, 665 S.W.2d at 493.

■ Thus our review of the trial court's rulings, both as to the facts and the legal significance of those facts, is limited to a determination of whether the trial court abused its discretion. *DuBose v. State*, 915 S.W.2d 493, 496 (Tex.Crim.App.1996). If the trial court's findings of fact are supported by the record, we are not at liberty to disturb them, and we address only the question of

whether the trial court improperly applied the law to the facts. *Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App.1990). An abuse of discretion occurs "only when the trial judge's decision was so clearly wrong as to lie outside that zone within which reasonable persons might disagree." *Cantu v. State*, 842 S.W.2d 667, 682 (Tex.Crim.App. 1992), *cert. denied*, 509 U.S. 926, 113 S.Ct. 3046, 125 L.Ed.2d 731 (1993). Where the circumstances indicate that the court's decision is beyond the zone of reasonable disagreement, an appellate court will not hesitate to find an abuse of discretion. *Theus v. State*, 845 S.W.2d 874, 881 (Tex.Crim.App. 1992). We review the revocation of Brumbalow's community supervision in this manner.

## REVIEW OF REVOCATION

The court heard the following testimony:

J.M.

J.M. testified that she lives in Hempstead but was visiting her aunt, Jennie Gandy, in Hamilton. J.M. and Brumbalow's thirteen-year-old daughter, A.B., were friends. J.M. was at A.B.'s house when Brumbalow came out of the shower in a towel. He sat down in a chair in "his room by the kitchen." J.M. stated that he sat with his legs open and that she could see his penis.

She also testified that she, A.B., and Brumbalow went to a fair in Hico. As they were returning to Hamilton, A.B. was driving, J.M. was in the front seat, and Brumbalow was in the back seat. Brumbalow commented, "[A.B.], you finally stopped at a stop sign." J.M. turned around to look at Brumbalow and saw him holding his penis in his hands.

On cross-examination, J.M. denied that she had ever told anyone that Brumbalow came out of the bathroom nude. She testified that the fair had been in Stephenville rather than Hico, that they had stopped in Hico for a

---

1. As noted, affirmative defenses on which the defendant bears the burden of proof by a preponderance of the evidence are controlled by *Meraz v. State*, 785 S.W.2d 146, 154 (Tex.Crim.App. 1990). Properly-raised defenses which the State must disprove beyond a reasonable doubt, *e.g.* self-defense, will undoubtedly be reviewable under *Clewis*.

2. An example of the review method that would change is *Upton v. State*, 853 S.W.2d 548, 553 (Tex.Crim.App.1993) (reviewing court will not disturb ruling in suppression hearing if court's resolution of controverted issue is supported by the record).

soda, and that Brumbalow had let A.B. drive from Hico to Hamilton. J.M. testified that shortly after she returned home to Hempstead, A.B. had driven to Hempstead and picked her up. The girls had "run away" but been caught by the police. J.M. stated that she had not spent the night at A.B.'s house after the exposure incident.

JOSH STIFFLEMIRE

Josh Stifflemire, a fifteen-year-old friend of both J.M. and A.B., testified that J.M. told him Brumbalow had walked out of the bathroom naked. J.M. also told him that, on the trip back from Stephenville, she had seen Brumbalow in the backseat of the car apparently "playing with hisself."

JENNIE GANDY

Jennie Gandy, J.M.'s aunt, testified that J.M. spent the night with A.B. the night of the fair and a few more nights thereafter.

BILLIE DANIEL BRUMBALOW

Brumbalow denied both incidents. He testified that he often would sit and drink coffee at the dining room table in his underwear with a towel wrapped around him. However, he stated that the dining room was around the corner from the family area.

COURT'S FINDINGS

The court found insufficient evidence of the "shower incident." As to the exposure in the car, the court found by a preponderance of the evidence that Brumbalow "had his hand around his penis" and "said something to get [J.M.] to turn around." The court "reluctantly" found the allegation in the revocation motion was "true."

REVIEW

■■■ Brumbalow argues that J.M.'s description of the incident is "implausible" and "lacking in detail." He further asserts that nothing in her description indicates that Brumbalow intended to arouse or gratify his sexual desire. Intent may be inferred from the actions or conduct of appellant. *Robertson v. State*, 871 S.W.2d 701, 705 (Tex.Crim. App.1993). At a revocation hearing, the judge is the sole trier of fact and determines the credibility of witnesses. *Ex parte Tarver*, 725 S.W.2d 195, 198 (Tex.Crim.App. 1986); *Garrett*, 619 S.W.2d at 174.

There is evidence that Brumbalow was riding in the backseat of a car driven by his thirteen-year-old daughter with eleven-year-old J.M. in the front seat. He engaged in conversation with the girls, causing J.M. to turn around and observe Brumbalow with his penis in his hands. J.M. told her friend Josh that Brumbalow was "playing with hisself." The court could, as factfinder, believe J.M. and disbelieve Brumbalow. Thus, the record supports the court's conclusion. *See DuBose*, 915 S.W.2d at 496. Because its decision is within the zone of reasonable disagreement, no abuse of discretion occurred. *Cantu*, 842 S.W.2d at 682. We overrule point one.

CHARACTER FOR TRUTHFULNESS

■■■ In his second point, Brumbalow asserts that the court erred in refusing to permit him to attack J.M.'s credibility with the opinion of her grandfather as to her character for truthfulness.

Robert Bain, J.M.'s grandfather, testified that J.M. had been visiting his daughter Jennie that summer.[3] He testified that J.M. only spent two to three hours at his house that summer because he "didn't want her over there." When asked by the court to elaborate, Bain stated that J.M.'s mother and grandmother had "fabricated stories before" and that he was afraid he would "get caught in the middle of some kind of stuff."[4] He testified that he saw J.M. once every three or four months.

The following exchange took place:

[DEFENSE]: Do you have any problem, Mr. Bain, in believing whether or not your granddaughter [J.M.] tells the truth?

[STATE]: Objection. It goes to the relevancy—it goes to the

---

3. Bain testified that he is the father of J.M.'s mother, Tonya, and of Jennie Gandy. However, Tonya and Jennie have different mothers.

4. Bain testified that he and Tonya's mother had divorced thirty years ago. His ex-wife filed statutory rape charges against him. He testified that he was acquitted of the charges. He then won a custody battle for Tonya.

obligation of the finder of fact. It usurps the function of the finder of fact. If he's got specifics, he can testify to a specific instance, that's one thing. To offer an opinion about the credibility when he hasn't been shown to be competent—he said he spent three hours with her this summer. There's no showing that he—

THE COURT: I will sustain.

Defense counsel then pursued a line of questioning about Bain's relationship with his daughter Tonya, J.M.'s mother.

Brumbalow argues that Bain's opinion as to J.M.'s truthfulness was "entirely proper and critical to the defense of this particular case." TEX.R.CRIM.EVID. 404(a)(3), 405(a), 608(a). The State responds that Brumbalow did not lay the proper predicate for the opinion testimony. *Id.* 602.

The credibility of a witness may be attacked by evidence of opinion or reputation as to the witness' character for truthfulness. *Id.* 608(a). Lay witnesses may not testify unless sufficient evidence is introduced to show the witness has personal knowledge of the matter. *Id.* 602; 1 STEVEN GOODE, OLIN G. WELLBORN III & M. MICHAEL SHARLOT, GUIDE TO THE TEXAS RULES OF EVIDENCE: CIVIL AND CRIMINAL § 608.1 n. 16 (Rule 602 mandates that character witness expressing an opinion on the veracity of a fact witness must be personally acquainted with the fact witness).

Bain testified that J.M. is his granddaughter and that he sees her infrequently. He did not testify that he knew of J.M.'s character for truthfulness. The majority of his testimony concerned the lack of veracity of his daughter Tonya and his ex-wife, J.M.'s grandmother. The determination of the admissibility of evidence is within the discretion of the court. TEX.R.CRIM.EVID. 104; *Jackson v. State*, 575 S.W.2d 567, 570 (Tex.Crim.App. [Panel Op.] 1979). Error does not occur unless the court abuses that discretion. *Werner v. State*, 711 S.W.2d 639, 643 (Tex. Crim.App.1986). Finding that the court did not abuse its discretion, we overrule point two.

We affirm the judgment.