No. 04-98-00645-CR



Daniel CORTEZ,


Appellant



v.



The STATE of Texas,


Appellee



From the 175th District Court, Bexar County, Texas


Trial Court No. 97-CR-0972


Honorable James E. Barlow, Judge Presiding



Opinion by: Catherine Stone, Justice 


Sitting: Phil Hardberger, Chief Justice 

 Catherine Stone, Justice 

 Sarah B. Duncan, Justice 


Delivered and Filed: June 2, 1999


AFFIRMED


 Daniel Cortez was convicted of indecency with a child by exposure and sentenced to ten years
imprisonment. On appeal, Cortez argues that the trial court erred by refusing to allow him to impeach
the credibility of the complaining witness and that he received ineffective assistance of counsel. We
determine that these points of error lack merit and affirm the judgment of the trial court.


Factual Background

 At trial, P.H., the complainant, testified that while playing outside her apartment with her
sister, she heard Cortez unzip his pants. When P.H. looked in Cortez's direction, she testified that
he was holding his penis with his hand. P.H. tried to get away by running to her own apartment but
could not get inside because the door was locked. She then ran to a neighbor's apartment. The
neighbor, Mary Garza, testified that when P.H. came to her apartment, she saw Cortez with his pants
unzipped, exposing himself, and making obscene gestures at P.H.'s sister. Garza contacted the
apartment manager, who then contacted the police.

Impeaching of the Credibility of the Witness

 The following exchange took place at trial between defense counsel and social worker,
Christina Mlynek:

Defense: And, Ms. Mlynek, you know P.H. [complainant] and A.H. [sister] and D.H.[mother]?

Mlynek: Yes, I do.

Defense: And you have worked with that family; is that correct?

Mlynek: Yes, I have.

Defense: And do you have an opinion regarding the truthfulness of P.H.?

Mlynek: I have some personal experiences with her lack of truthfulness.

Prosecutor: I'm going to have to object, Your Honor.

Court: I will sustain the objection to it, counsel.

Prosecutor: There's no predicate laid for that kind of question, Your Honor.

The Court: I'll sustain the objection to it, counsel.

Prosecutor: I'm going to ask to the Court to instruct the jury that that was an improper answer and to please disregard.

Court: All right. I will instruct you that you cannot consider the last question.

 Cortez contends in his first point of error that the trial court improperly sustained the State's
objection because the State asserted an incorrect premise and standard of the law. We review the trial
court's determination of the admissibility of evidence for an abuse of discretion. See Colburn v.
State, 966 S.W.2d 511, 514 (Tex. Crim. App. 1998). Further, we will affirm the trial court's ruling
on any ground regardless of the theory argued by the State at trial, where the State is not raising the
issue on appeal. See State v. Mercado, 972 S.W.2d 75, 78 (Tex. Crim. App. 1998); Graham v. State,
893 S.W.2d 4, 7 (Tex. App.--Dallas 1994, no pet.).

 The State contends that counsel had not laid the proper predicate for asking a question
regarding Mlynek's opinion about the truthfulness of the complainant. Under Texas Rule of Evidence
608, a defendant may impeach a witness's testimony through opinion or reputation testimony. To
properly comment on the reputation for truthfulness of a witness, the witness must indicate that she
has personal knowledge of the matter or is personally acquainted with the witness. See Brumbalow
v. State, 933 S.W.2d 298, 302 (Tex. App.--Waco 1996, pet. ref'd) (holding that proper predicate
had not been laid by opinion witness where he saw the complainant once every three or four months
and had only spent three hours with the witness during the summer).

 Cortez argues that the proper predicate to the introduction of reputation testimony was laid
through Mlynek's testimony regarding prior personal experience. The record reveals that Mlynek
indicated that she knew P.H., that she had helped P.H., her mom, and sister move into their
apartment, and that she worked with the family. Mlynek did not indicate nor did defense counsel
determine exactly how much time Mlynek had spent with P.H. Thus, the trial court could have
determined that the defense had not yet shown that Mlynek had adequate personal knowledge of
P.H. or that she was personally acquainted with P.H. to give an opinion as to her truthfulness.
Additionally, even after the court's ruling, counsel could have tried to establish the proper predicate
before questioning Mlynek about her opinion, yet she failed to do so. As a result, although another
trial court may have ruled differently, we cannot conclude that this ruling was an abuse of discretion.
See Culverhouse v. State, 755 S.W.2d 856, 860 (Tex. Crim. App. 1988).

 Further, the State is correct in noting that a witness's character for truthfulness may not be
impeached by proof of specific instances of conduct. See Tex. R. Evid. 608(b) (providing an
exception for convictions of crimes); Gonzalez v. State, 929 S.W.2d 546, 549 (Tex. App.-- Austin
1996, pet. ref'd). Mlynek's response to the question which asked for her opinion was "I have some
personal experiences with her lack of truthfulness." This answer does not provide an opinion but
rather provides the jury with information regarding the specific instances forming her opinion. Thus,
the trial court would not have abused its discretion by determining that Mlynek's answer was
inadmissible on these grounds as well. Cortez's first point of error is overruled.

Ineffective Assistance of Counsel

 Under Strickland v. Washington, to prevail on a claim for ineffective assistance of counsel,
the defendant must show that counsel's representation fell below an objective standard of
reasonableness and that the deficient performance prejudiced the defense. See Strickland v.
Washington, 466 U.S. 668, 687 (1984); Hernandez v. State, 726 S.W.2d 53, 57 (Tex. Crim. App.
1986). We will consider each of Cortez's ineffective assistance claims guided by the well-established
rules outlined in these cases.

 In his second point of error, Cortez contends that he received ineffective assistance of counsel
because counsel failed to file a specific verified motion and failed to request and ex parte hearing
pursuant to Ake v. Oklahoma and Tex. Code Crim. Pro. art. 26.05 (Vernon 1989).(1) In April of
1997, counsel for the defendant filed a motion for a court appointed investigator. No action on this
motion was taken by the trial court. Two months later, counsel filed an amended motion for
appointment of an investigator. The trial court approved the reimbursement of investigator funds for
$300 already incurred by the defendant. Almost a year later, counsel filed a motion for
reconsideration and approval of the incurring of additional $300 in investigative expenses. The trial
court denied the motion and requested additional information concerning the "extraordinary
circumstances" requiring approval for additional funds. At the close of the guilt/innocence phase of
the trial, defense counsel presented a Bill of Exception detailing how the investigator would have used
these additional funds.(2) Cortez maintains that counsel acted ineffectively as she was aware prior to
trial of the extraordinary circumstances requiring the approval of additional funds but failed to get
this information into evidence.

 In Ake v. Oklahoma, the Supreme Court determined that due process requires that an indigent
defendant be appointed an expert to assist in his defense when the defendant makes a preliminary
showing that the issue for which he seeks expert assistance is likely to be a significant factor at trial.
See Ake v. Oklahoma, 470 U.S. 68, 83 (1985); Williams v. State, 958 S.W.2d 186, 192 (Tex. Crim.
App. 1997). "In order to make a threshold showing that the issue underlying the defensive theory
or the issue in the State's case that the defense has reason to think is vulnerable, will be a significant
factor at trial, the defendant necessarily has to explain his theories and describe with some specificity
how an expert would assist him." Williams, 958 S.W.2d at 193. This rule "does not mean that the
State must 'purchase for an indigent defendant all the assistance that his wealthier counterparts might
buy'" or the expert of his personal liking. Griffith, 983 S.W.2d at 286 (quoting Ake, 470 U.S. at 77).
Nonetheless, the burden is on the defendant to make a sufficient threshold showing. Griffith, 983
S.W.2d at 286-87.

 The record does not show that counsel erred by failing to obtain the approval of these funds
or that the trial court abused its discretion by failing to approve these funds. Counsel's Bill of
Exception does not adequately show the need for an expert as it does not show how the information
obtained by the expert will be a significant factor at trial. We cannot determine that counsel was
ineffective for asserting this information because the record contains no evidence that this information
even exists. Similarly, there is no evidence indicating that if error was committed, the error was not
harmless. See Lighteard v. State, 982 S.W.2d 532, 535 (Tex. App.--San Antonio 1998, pet. filed).
We recognize that the lack of this evidence may very well be due to counsel's ineffectiveness.
However, where the error alleged against counsel is one of omission rather than commission, the
point is often better made through a habeas corpus proceeding which would allow the defendant to
introduce evidence counsel may have neglected. See Jackson v. State, 973 S.W.2d 954, 957 (Tex.
Crim. App. 1998) (noting that collateral attack may be a more effective method to develop a claim
for ineffective assistance of counsel). Without more, we are unable to sustain Cortez's point of error.

 Cortez argues in his final point of error that counsel was ineffective because she failed to
request a hearing outside the presence of the jury as to P.H.'s competency or reliability to testify. On
May 11, counsel filed a "Motion to Determine Reliability of Hearsay Statement of Alleged Child
Abuse Complainant" requesting under article 38.072 § 2(b)(2) of the code of Criminal Procedure that
a hearing be held outside the presence of the jury to determine whether the statement is reliable based
on the time, content, and circumstances of the statement. At the pretrial hearing, counsel raised the
issue again. The trial court ruled that he would make a determination as to reliability when the child
complainant took the stand.

 In order to determine if counsel's inaction actually prejudiced Cortez's case, we will review
this point as if counsel preserved error. To determine the competency of a child to testify, we review
the trial court's ruling under Tex. R. Evid. 601 for an abuse of discretion. See Hollinger v. State,
911 S.W.2d 35, 38 (Tex. App.--Tyler 1995, pet. ref'd). When reviewing the trial court's
determination of competency, we review the entire testimony of the witness. See Dufrene v. State,
853 S.W.2d 86, 88 (Tex. App.--Houston [14th Dist.] 1993, pet. ref'd).

 Rule 601 provides:

 (a) Every person is competent to be a witness except as otherwise provided in these
rules. The following witnesses shall be incompetent to testify in any proceeding
subject to these rules:

 (2) Children or other person who, after being examined by the court, appear not to
possess sufficient intellect to relate transactions with respect to which they are
interrogated.


Tex. R. Evid. 601. To assist in this determination, three elements are to be considered by the court:
(1) the competence of the witness to observe intelligently the events in question; (2) the capacity of
the witness to recollect events; and (3) the capacity of the witness to narrate the facts. See Hollinger,
911 S.W.2d at 38-39.

 P.H., a 10 year old, after being sworn in, indicated that she understood the difference between
the truth and a lie and that she would tell the truth in her testimony before the court. Her complete
testimony also indicates that she intelligently observed the events in question and could recollect and
narrate her version of the events. See Macias v. State, 776 S.W.2d 255, 256 (Tex. App.--San
Antonio 1989, pet. ref'd) (holding that incompetency is not necessarily shown even where answers
are conflicting or showed confusion). Cortez argues that counsel was aware of P.H.'s potential for
untruthfulness and that testimony from Christina Mlynek would have verified these contentions.
However, these assertions fall outside of the record. Furthermore, nothing in P.H.'s testimony
indicates that a hearing outside the presence of the jury under Tex. R. Crim Proc. art. 38.072
(Vernon Supp. 1999) would have resulted in a different determination. Therefore, we conclude that
had counsel preserved error, the trial court did not abuse its discretion by allowing P.H. to testify.
Consequently, Cortez has failed to show how counsel's actions prejudiced his defense. Cortez's final
point of error is overruled.

 The judgment of the trial court is affirmed.

 Catherine Stone, Justice

DO NOT PUBLISH








1. Article 26.05 provides in pertinent part:

(a) A counsel, other than attorney with a public defender's office, appointed to represent a defendant in a criminal
proceeding, including a habeas corpus hearing, shall be reimbursed for reasonable expenses incurred with prior court
approval for purpose of investigation and expert testimony and shall be paid a reasonable attorney's fee for performing
the following services, based on the time and labor required, the complexity of the case, and the experience and ability
of the appointed counsel:

(2) reasonable and necessary time spent out of court on the case, supported by any documentation that the court
requires; . . . .

Tex. Code Crim. Proc. art. 26.05(a) (Vernon 1989).
2. The relevant portions of the Bill of Exception are as follows:

Defense: And if you had been approved the additional $300 for investigative expenses, who ­ what
investigation did you plan to check, undertake?

Investigator: I planned to do at least 15 more hours of additional investigation for the defendant . . . .

 I would have contacted a Dr. Sean Connally. He was one of the defendant's doctors. He had quite
a bit of background information on the defendant as far as his medical conditions, previous
treatments he's had.

 I would have contracted and interviewed Mary Garza, who was a State's witness. I would have
contacted and interviewed the defendant's family members . . . . They lived in Houston. I would
have filed with a Doctor Battin. He was the doctor that also ­ that had the knowledge about the
defendant's prior treatments and his condition, mental state.

Defense: Are were these psychological and medical records you sought?

Investigator: Yes. I'm referring to a psychological and medical records. I would have contacted Deborah Hurt
­ Hurts. I would have contacted her and interviewed her and attorney but she's deaf. I would have
needed an interpreter to talk to her.

 I would have followed up my investigations by interviewing CPS workers, people that had worked
­ they had worked cases on the family. There's quite a lengthy CPS record dealing ­ I mean, dealing
with the family.

Defense: Was it your knowledge that there were CPS records related to this incident?

Investigator: Yes, there was. And the CPS workers, I needed to contact some of them, were no longer here in San
Antonio. Some of them were in Austin, so ­

* * *

Defense: Okay. And because the funds, the additional funds were not available, you were not able to provide
these services to the defendant; is that correct?

Investigator: Absolutely not.