# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00459-CR

**David Clifton Spurk, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF BASTROP COUNTY, 21ST JUDICIAL DISTRICT
### NO. 10,393, HONORABLE TERRY L. FLENNIKEN, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant David Spurk was arrested for assault while under community supervision for the offense of intoxication manslaughter. Shortly after Spurk's arrest, the State moved to revoke his probation. At his probation revocation hearing, the district court found that Spurk had violated the conditions of his probation that required him to abstain from the use of alcohol and to make monthly payments for his fine, court costs, and probation supervision fee. In two issues, Spurk asserts that the evidence is insufficient to support revocation of his probation and that the district court's restitution order denied him due process of law. We affirm the district court's order.

## BACKGROUND

Spurk was convicted of intoxication manslaughter on April 8, 2003. The district court assessed a ten-year sentence and placed Spurk on community supervision for ten years. It also

ordered Spurk to pay a $20,000 fine, spend 180 days over ninety consecutive weekends in jail, complete 400 hours of community service, and pay restitution "in an amount to be determined." The court imposed twenty-one conditions of probation, including conditions that Spurk (1) not commit any new offense, (2) abstain from the use of alcohol and other intoxicants, (10) pay his fine and $211.25 court costs in $200 monthly installments, and (11) pay a probation supervision fee of $40 per month.

Spurk appealed his conviction and sentence on May 7, 2003, but on June 25, 2003, he withdrew his appeal. Also on June 25, the court issued an order modifying the conditions of Spurk's community supervision. The order prohibited Spurk from operating any motor vehicle without an alcohol-detecting interlock system and set the amount of restitution at $26,891.89, to be paid in installments of $244.50 per month (Spurk's fine, costs, and supervision fee required a combined monthly payment of $484.50). The order also recited that Spurk had waived his right to a revocation hearing. Spurk had 90 days from June 25, 2003, to appeal the modification order. Because he did not do so, we do not have a record of the evidence that the court heard in reaching its decision on the amount of restitution.

Spurk was arrested at his home on May 10, 2004, and charged with assaulting his girlfriend. The arresting officers testified that they smelled alcohol on Spurk's breath. The State filed a motion to revoke Spurk's probation, alleging that Spurk had violated conditions (1) and (2) of his probation by assaulting his girlfriend and consuming alcohol on May 10. It also alleged that, before May 10, Spurk had violated conditions (10) and (11) by failing to make monthly payments as ordered.

2

The court held a revocation hearing on July 1, 2004. The court heard testimony from several witnesses, including Spurk, his girlfriend, his ex-girlfriend, his probation officer, two of the arresting officers, and his girlfriend's mother.

Spurk's girlfriend, Melyssa Carroll, testified that she drank beer at the home of Spurk's brother on May 10 and became very intoxicated, but Spurk did not drink that night. Carroll stated that she insisted on driving home, over Spurk's protests. After arriving home, Carroll recalled pouring a beer for herself in front of Spurk, "just to upset him." Spurk told her that if she was going to drink, she had to leave or he would leave. When Spurk started to take her keys to the house and the mailbox, Carroll testified that she threw her cup of beer at him, splashing it on his chest. She said that she attacked Spurk in an attempt to retrieve her keys and he fended her off. During the altercation, both of them sustained minor scratches and Carroll was bruised. Carroll testified that she took two knives from the kitchen, trapped Spurk in the bedroom, and soon after, heard knocking at the door. Carroll "hurried" to the kitchen, returning the knives while Spurk answered the door—to the police. Fearing that she would go to jail, Carroll stated that she did not tell the police about the knives or give an accurate account of the altercation. While the police were still at the scene, she completed an "assault victim statement," identifying Spurk as the aggressor and alleging that he had choked her and held down her wrists. Carroll recalled giving another statement two weeks later, at the request of Spurk's counsel. In that second statement and during the revocation hearing, Carroll contradicted her initial version of the May 10 incident, claiming that the information in her assault victim statement was incorrect.

Spurk testified that he did not drink alcohol on May 10 and denied telling the arresting officers that he had been drinking. He corroborated Carroll's testimony that she had been intoxicated and that she had thrown a cup of beer at him.

Spurk's ex-girlfriend, Chelsea Graham, testified that she was also at the home of Spurk's brother on May 10. She stated that Carroll drank beer, became intoxicated, and passed out, but Spurk had not been present while Carroll was drinking. Graham testified that Spurk did not allow her to drink when she was with him because he could not "be around alcohol."[1]

Cindy Parker, Spurk's probation officer, testified that Spurk was delinquent in payment of his fees, fines, and restitution. She stated that Spurk paid a total of $740 but none of his payments were for the full monthly amount of $484.50. Based on his delinquent payments and the assault offense, Parker opined that Spurk was not a good candidate to continue on probation.

Officer Patricia Bruggeman testified that she and two other police officers responded to the May 10 domestic disturbance call from Spurk's neighbor that culminated in Spurk's arrest. Once inside Spurk's apartment, Bruggeman spoke with Carroll, who did not show any signs of intoxication. Bruggeman recalled Carroll identifying Spurk as the aggressor and stating that he "started hitting her in the head with his fingers" and choked her. Bruggeman also testified that, "in a round-about way," Carroll said that Spurk made her drive him home because he was intoxicated. When Bruggeman spoke with Spurk, he denied choking Carroll. Bruggeman noted that his breath

---

[1] Spurk's parents and his neighbor testified that they had not seen Spurk drink since he began his probation.

4

smelled slightly of alcohol. Bruggeman denied that Spurk's clothing or any part of the rug was wet, contrary to Carroll's testimony that she had thrown beer on him. When Bruggeman told Spurk that he "was under the age to be drinking" and asked him why he was drinking, Spurk replied that "he did not know," but did not deny drinking.

Officer Axel Goldman testified that he also participated in Spurk's May 10 arrest. Goldman denied detecting any signs of intoxication on Carroll, but he said that Spurk had a "pretty strong odor" of alcohol coming from his breath and his eyes were "relatively bloodshot and glassy." Goldman stated that he was "absolutely certain" that the odor of alcohol came from Spurk's breath. Goldman further testified that Spurk "said he had been drinking."

Debra Williams, Carroll's mother, testified that Carroll had a drinking problem. Williams said that her daughter had been to "rehab," relapsed, and was sometimes physically combative when drunk.

At the conclusion of the hearing, the court found insufficient evidence that Spurk violated condition (1) of his probation (prohibition against the commission of any new offense). But it found sufficient evidence that Spurk violated conditions (2) (prohibition against use of alcohol), (10) (payment of his fine and court costs in monthly installments of $200), and (11) (payment of his probation supervision fee). It therefore granted the State's motion to revoke probation, ordering Spurk's incarceration for ten years and payment of $26,151.89 in restitution. Spurk filed a motion for new trial and a motion in arrest of judgment on August 2, 2004. Both motions were overruled by operation of law. This appeal followed.

5

## DISCUSSION

On appeal, Spurk contends that the evidence is insufficient to support revocation of his probation and that he was denied due process of law by the district court's entry of the restitution order.

### Standard of review

Review of an order revoking probation is limited to a determination of whether the trial court abused its discretion. *Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984); *Jackson v. State*, 645 S.W.2d 303, 305 (Tex. Crim. App. 1983). An abuse of discretion occurs "only when the trial judge's decision was so clearly wrong as to lie outside the zone within which reasonable persons might disagree." *Cantu v. State*, 842 S.W.2d 667, 682 (Tex. Crim. App. 1992). The trial court is the judge of the credibility of the witnesses and the weight to be given their testimony. *Garrett v. State*, 619 S.W.2d 172, 174 (Tex. Crim. App. 1981); *Mauney v. State*, 107 S.W.3d 693, 695 (Tex. App.—Austin 2003, no pet.). We view the evidence presented in a revocation proceeding in a light most favorable to the trial court's ruling. *See Garrett*, 619 S.W.2d at 174; *Mauney*, 107 S.W.3d at 695.[2]

---

[2] Several of our sister courts have concluded that a factual sufficiency review is unavailable in probation revocation proceedings. *See Johnson v. State*, 2 S.W.3d 685, 687 (Tex. App.—Fort Worth 1999, no pet.); *Johnson v. State*, 943 S.W.2d 83, 85 (Tex. App.—Houston [1st Dist.] 1997, no pet.); *Brumbalow v. State*, 933 S.W.2d 298, 300 (Tex. App.—Waco 1996, pet. ref'd).

**Sufficiency of evidence for revocation**

In his first issue, Spurk argues that there is insufficient evidence to support the district court's revocation of his probation. In probation revocation proceedings, the State has the burden of proving a violation of the terms of probation by a preponderance of the evidence. *Cobb v. State*, 851 S.W.2d 871, 873 (Tex. Crim. App. 1993); *Willis v. State*, 2 S.W.3d 397, 399 (Tex. App.—Austin 1999, no pet.). The State satisfies this standard "when the greater weight of the credible evidence before the court creates a reasonable belief that a condition of probation has been violated as alleged." *Jenkins v. State*, 740 S.W.2d 435, 437 (Tex. Crim. App. 1983). A finding of a single violation of the terms of probation is sufficient to support the court's revocation order. *Sanchez v. State*, 603 S.W.2d 869, 871 (Tex. Crim. App. 1980). Thus, if the district court did not abuse its discretion in finding that Spurk violated at least one condition of his probation, Spurk's first issue must be overruled. With these principles in mind, we consider whether sufficient evidence supported the court's finding that Spurk violated his probation by failing to make monthly payments on his fine, costs, and supervision fee.

Cindy Parker, Spurk's probation officer, testified that Spurk was delinquent in payment of his fees, fines, and restitution. She stated that Spurk paid a total of $740 but none of his payments were for the full monthly amount of $484.50. Based on his delinquent payments and the assault offense, Parker opined that Spurk was not a good candidate to continue on probation.

Viewed in the light most favorable to the district court's ruling, this evidence is legally sufficient to support a finding that Spurk violated conditions (10) and (11) of his probation by failing to make the monthly payments as ordered. Having found that there is sufficient evidence

to establish that Spurk violated his probation by failing to make monthly payments on his fine, costs, and supervision fee, we need not determine whether there is sufficient evidence to show that he violated condition (2) by consuming alcohol. *See Sanchez*, 603 S.W.2d at 871. We overrule Spurk's first issue.

**Due process**

In his second issue, Spurk contends that he was denied due process by the district court's restitution order. Spurk did not specify whether his complaints pertain to the restitution ordered after the June 25, 2003 hearing, or to the restitution ordered after the July 1, 2004 revocation hearing, or both. Spurk's arguments in both contexts are unpersuasive.

Spurk's due process complaints concerning the June 25 hearing are untimely. An appellant must file notice of appeal within 30 days after sentencing, or if he files a timely motion for new trial, within 90 days of sentencing. Tex. R. App. P. 26.2(a). This Court lacks jurisdiction to address the merits of an appeal that is not timely perfected. *Slaton v. State*, 981 S.W.2d 208, 210 (Tex. Crim. App. 1998). When a court enters a restitution order after entering a probationary sentence, the sentencing is incomplete until the entry of the restitution order. *See Bailey v. State*, 160 S.W.3d 11, 15 (Tex. Crim. App. 2004). Here, Spurk could have appealed issues arising from his conviction and sentencing until September 23, 2003, the 90th day after the June 25, 2003 restitution hearing, which was the final stage of his sentencing. He cannot now, in his appeal from the probation revocation, challenge an issue concerning the underlying trial. *See id.* at 13 (citing Tex. Code Crim. Proc. Ann. art. 42.12, § 23(b) (West Supp. 2005)). Because Spurk filed his appeal more

8

than a year after his June 25 restitution hearing, it is untimely and we lack jurisdiction to address issues related to that proceeding.

Spurk's arguments concerning the July 1 revocation hearing are similarly flawed. He contends that the district court's restitution order "lacks a factual basis in the record." To address this argument, it is helpful to review the events of Spurk's underlying conviction. After Spurk's jury trial for intoxication manslaughter, the district court placed Spurks on ten years' probation and ordered him to pay a $20,000 fine and $26,891.89 in restitution. The court entered the restitution order on June 25, 2003. Spurk had 90 days from that date to appeal the order. Because he did not do so, we do not have a record of the evidence that the court heard in reaching its decision on the amount of restitution. But the amount of restitution that the court ordered is certain and the time to raise an appellate challenge to that amount has expired.

When the court subsequently revoked Spurk's probation, it was required to enter the restitution due as of the date of the revocation. *See* Tex. Code Crim. Proc. Ann. art. 42.03, § 2(b) (West Supp. 2005) ("In all revocations of a suspension of the imposition of a sentence the judge *shall* enter the restitution or reparation due and owing on the date of the revocation."). In this case, the record shows that Spurk paid $740 of the total $26,891.89 restitution ordered by the court. On the date of the revocation hearing, Spurk still owed a balance of $26,151.89 in restitution, calculated as the difference between the total amount of the court-ordered restitution and Spurk's restitution payments. The district court entered this amount when it revoked Spurk's probation and its actions were in accordance with the code of criminal procedure.

9

Next, Spurk argues that the restitution order should be declared void because the order was not made in Spurk's presence, in open court. In support of his argument, Spurk cites the code of criminal procedure's requirement that a written judgment should describe the restitution ordered. *See id*. art. 42.01, § 1(25) (West Supp. 2005). Section one of article 42.01 defines a judgment as "the written declaration of the court signed by the trial judge and entered of record showing the *conviction or acquittal* of the defendant." *Id*. art. 42.01, § 1 (emphasis added). A probation revocation proceeding is an administrative hearing, not a criminal trial involving a conviction or acquittal. *Cobb*, 851 S.W.2d at 873. Thus, while article 42.01 applied to the sentencing order in Spurk's underlying trial for intoxication manslaughter, it did not apply to the subsequent revocation order made the basis of this appeal. We overrule Spurk's second issue.

## CONCLUSION

Having overruled both of Spurk's issues, we affirm the district court's order.

_____

Bob Pemberton, Justice

Before Chief Justice Law, Justices B. A. Smith and Pemberton

Affirmed

Filed: June 30, 2006

Do Not Publish

10