NO. 07-05-0396-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL B



MARCH 19, 2007


 ______________________________



SHANE WILKINS, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE


_________________________________



FROM THE 140TH DISTRICT COURT OF LUBBOCK COUNTY;



NO. 2003-402468; HONORABLE JIM BOB DARNELL, JUDGE


_______________________________



Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.


 OPINION


 Appellant, Shane Wilkins, seeks an appeal of the revocation of his community
supervision for the offense of aggravated kidnapping. Appellant contends the trial court
erred in finding that he had violated his community supervision by committing the offense
of retaliation. We reverse and remand.

Background 

 Appellant was convicted of aggravated kidnapping, aggravated assault, and three
counts of aggravated assault with a deadly weapon. Appellant was sentenced to 10 years
confinement in the Institutional Division of the Texas Department of Criminal Justice on the
aggravated kidnapping case, 10 years confinement on the one count of aggravated
assault, and two years confinement in each of the three cases of aggravated assault with
a deadly weapon. In each case, appellant was placed on community supervision. While
appellant was on community supervision, appellant's wife and her ex-husband were
engaged in a custody dispute which resulted in several court hearings and, at times,
intervention by Child Protective Services (CPS). In June 2005, District Judge Sam Medina
scheduled an emergency hearing in the 237th District Court involving the parents of the
children and CPS. Although appellant was a non-party to the suit, appellant desired to
attend the hearing and attempted to enter the courtroom. However, Judge Medina
maintained a dress code policy prohibiting shorts in the courtroom, and appellant was
refused admittance by the bailiff until he was able to properly dress for court. As appellant
was leaving the courthouse to change into more appropriate clothing, he made a telephone
call. While on the phone, two attorneys heard appellant make multiple statements to the
effect that he wished that Judge Medina would die. The attorneys, after returning to their
respective offices to handle other business matters, decided to report the overheard
remarks to Judge Medina who in turn reported the incident to the District Attorney's office. 
The State filed an application to revoke appellant's community supervision contending that
appellant had violated his community supervision by committing the offense of retaliation
by making the remarks overheard by the attorneys. Later on that day, appellant returned
to the courtroom and attended the proceedings without incident until he was arrested on
the motion to revoke warrant. After a hearing on September 7th, the trial court found that
appellant had violated his community supervision, revoked the order placing him on
community supervision, and ordered that appellant serve the sentence of ten years
confinement in the Institutional Division of the Texas Department of Criminal Justice in
each case.

 Appellant appeals the judgment revoking his community supervision contending that
(1) the evidence is insufficient to support the trial court's finding that appellant had violated
his community supervision; (2) the trial court's ruling violated appellant's right to free
speech protected by the first amendment of the United States Constitution; (3) appellant
was not afforded due process as guaranteed by the fourteenth amendment of the United
States Constitution and by Article I, Section 19 of the Texas Constitution; and (4) the trial
court erroneously sentenced appellant to ten years in the three aggravated assault with a
deadly weapon cases. (1)

Standard of Review

 A community supervision revocation proceeding is neither a criminal nor a civil trial,
but is rather an administrative proceeding. Cobb v. State, 851 S.W.2d 871, 873
(Tex.Crim.App. 1993). The State must prove by a preponderance of the evidence that a
defendant violated the terms of his community supervision. See id. Our review of an order
revoking community supervision is limited to determining whether the trial court abused its
discretion. See Cardona v. State, 665 S.W.2d 492, 493 (Tex.Crim.App. 1984). In a
community supervision revocation hearing, an abuse of discretion occurs when the trial
judge's decision was so clearly wrong as to lie outside that zone within which reasonable
persons might disagree. See Brumbalow v. State, 933 S.W.2d 298, 300 (Tex.App.-Waco
1996, writ ref'd). The evidence is viewed in the light most favorable to the trial court's
order. Johnson v. State, 943 S.W.2d 83, 85 (Tex.App.-Houston [1st Dist.]1997, no pet.)
(declining to use a factual sufficiency standard to review the sufficiency of the evidence in
a revocation proceeding); see also Garrett v. State, 619 S.W.2d 172, 174 (Tex.Crim.App.
[Panel Op.] 1972).

 The offense of retaliation can be committed by a person if he "intentionally or
knowingly harms or threatens to harm another by an unlawful act in retaliation for or on
account of the service or status of another as a public servant." See Tex. Penal Code
Ann. § 36.06(a)(1)(A) (Vernon Supp. 2006). A threat is a communicated intent to inflict
harm. See Black's Law Dictionary 1519 (8th ed. 2004). A person acts intentionally when
it is his conscious objective or desire to engage in the conduct or cause the result. See
Tex. Penal Code Ann. § 6.03 (Vernon 2003). A person acts knowingly when he is aware
of the nature of his conduct or that his conduct is reasonably certain to cause the result. 
Id. Intent can be inferred from the acts, words, and conduct of the accused. See Beltran
v. State, 593 S.W.2d 688, 689 (Tex.Crim.App. 1980). Under the retaliation statute, a
threat does not have to be direct. See Davis v. State, 890 S.W.2d 489, 491
(Tex.App.-Eastland 1994, no writ) (appellant's statement that he had a criminal mind
messed up on drugs and that he might just do anything constituted threat to CPS worker). 
Further, the threat does not have to be communicated directly to the person being
threatened. See Doyle v. State, 661 S.W.2d 726, 728 (Tex.Crim.App. 1983).

 From the facts in this case, we find that the retaliation charge against appellant was
a result oriented offense. See In re B. P. H., 83 S.W.3d 400, 407 (Tex.App-Fort Worth
2002, no pet.); Herrera v. State, 915 S.W.2d 94, 97 (Tex.App.-San Antonio 1996, no writ). 
As a result oriented offense, the action being criminalized is the threat to harm and the
intent to inhibit public service by others. Herrera, 915 S.W.2d at 97; see also Doyle, 661
S.W.2d at 729. Therefore, we cannot focus on the nature of the offense, i.e., the fact that
appellant made a threatening statement because of Judge Medina's policy of no shorts in
the courtroom. Rather we consider whether appellant made the statement with the intent
to inhibit Judge Medina's service as a public official or with knowledge that it was
reasonably certain that his statement would inhibit Judge Medina's service as a public
official. See Doyle, 661 S.W.2d at 729 (the retaliation statute is meant to encourage
citizens to perform public duties without the fear of retribution). Considering the actions
of the attorney witnesses, bailiff, district attorney's office, and Judge Medina, appellant
certainly did communicate words that others perceived as a threat. Further, evidence
shows that appellant expressed his wishes for Judge Medina's death on account of his
service as a district judge, specifically as administrator of his courtroom in establishing a
dress code for the privilege of entering his courtroom. But there is no evidence that
appellant intended or was reasonably certain that his stated intent for Judge Medina's
death would in any way affect his performance as district judge or cause Judge Medina to
fear retribution. Under this subjective test, the evidence must demonstrate that appellant
intended or was reasonably certain that his statements would be interpreted as
expressions of an intent to harm a public servant in retaliation of the public duty performed. 
See Puckett v. State, 801 S.W.2d 188, 193 (Tex.App.-Houston 1990, writ ref'd). 

 In this matter, no evidence supports a conclusion that appellant meant to affect
Judge Medina's actions or emotional well-being. Even though the attorneys relayed the
threat to law enforcement who took precautions, nothing in the record can be construed
as evidence that appellant intended or knew with reasonable certainty that his statement
would cause a reaction such as the heighten sense of security put into place after the
District Attorney's office became involved. Finally, the record shows that appellant
complied with Medina's no-shorts policy, went home to change clothing, and returned to
the courtroom without any demonstration of ill-feelings or inappropriate conduct in the
courtroom. We therefore conclude that no reasonable person could believe by a
preponderance of the evidence that appellant made a threatening remark with the requisite
retaliatory intent of placing Judge Medina in fear of retribution as a result of his duty as
district judge. We therefore conclude that the trial court abused its discretion in finding by
a preponderance of the evidence that appellant had committed the offense of retaliation. 
Since this was the only alleged violation of appellant's community supervision, we find that
the trial court erred in revoking appellant's community supervision. Having granted
appellant the relief sought on his first issue, we decline to address appellant's remaining
issues. See Tex. R. App. P. 47.1


Conclusion


 For the foregoing reasons, we reverse the trial court's order revoking appellant's
community supervision and remand this cause to the trial court for further proceedings
consistent with this opinion. 


 Mackey K. Hancock

 Justice



Publish. 



 

Quinn, C.J., concurs in the result but does so because he concludes that the comments
at issue, though utterly inappropriate and distasteful, did not constitute a threat. 








 
1. The State concedes that the trial court erred in sentencing appellant to ten years
confinement on the three cases of aggravated assault with a deadly weapon when the
original sentences in those cases were two years respectively. At a revocation hearing,
the trial court is authorized to proceed with the original sentence or to reduce the term of
confinement originally assessed. See Tex. Code Crim. Proc. Ann. art. 42.12 § 23(a)
(Vernon 2006).




 UnhideWhenUsed="false" Name="Medium Grid 3 Accent 4"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 









NO. 07-10-00120-CV, 07-10-00121-CV

 

IN THE COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL A

 



JUNE
17, 2010

 



 

HARVEY FLOYD HODO, APPELLANT

 

v.

 

THE STATE OF TEXAS, APPELLEE 



 



 

 FROM THE 47TH DISTRICT COURT OF RANDALL
COUNTY;

 

NO. 18700-A, 18765-A; HONORABLE HAL MINER, JUDGE



 



 

Before CAMPBELL
and HANCOCK and PIRTLE, JJ.

 

 

OPINION ON ABATEMENT

            On
March 23, 2010, in each referenced cause, pursuant to section 501.014(e) of the
Texas Government Code, the trial court signed and entered an Order to Withdraw Inmate Funds.[1]  By the withdrawal notifications
entered in each cause, the trial court directed the
Texas Department of Criminal Justice, Institutional Division, to withhold from
Hodos inmate trust account the following amounts: (1) $1,586.50 in cause
number 18700-A; and (2) $486.50 in cause number 18765-A.  Hodo filed pro se notices of appeal on April 6,
2010, challenging the withdrawal notifications. 
While both of the judgments upon
which the withdrawal notifications were based include an order that the State
recover "all court costs," the judgments do not assess these
costs.  

In
Harrell v. State, 286 S.W.3d 315 (Tex. 2008), the Texas Supreme Court
held that a withdrawal notification directing prison officials to withdraw
money from an inmate trust account pursuant to section 501.014(e) is a civil
matter akin to a garnishment action or an action to obtain a turnover
order.  Id. at 317-19; see also
Johnson v. Tenth
Judicial District Court of Appeals at Waco, 280 S.W.3d 866, 869 (Tex.Crim.App.
2008) (holding that orders directing withdrawal of funds from inmate trust
accounts is not a criminal matter).  In determining whether Harrell was accorded
constitutional due process in that proceeding, the Court balanced three factors
discussed in Mathews v. Eldridge, 424
U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), and noted that Harrell had "already received
some measure of due process."  Harrell, 286 S.W.3d at 320.

            The
three Eldridge factors
considered in Harrell are: (1) the private interest affected by the
official action, (2) the risk of an erroneous deprivation of such interests
through the procedures used, and the probable value, if any, of additional or
substitute procedural safeguards, and (3) the government's interest, including
the function involved and the fiscal and administrative burdens that additional
or substitute procedural requirements would entail.  Id. at 319-20 (citing Mathews,
424 U.S. at 335).  The Court found the
private interest to be affected to be easily ascertainable by reference to the
amount identified in a prior court document, which could be stated with
exactness as "the costs assessed when the convicting court sentenced
him."  Id. at 320.  Regarding the risk of
erroneous deprivation, the Court identified the risk as modest where withdrawal
notifications under the statute are based on an amount identified in a previous
court document.  See Tex. Gov't Code Ann.
§ 501.014(e)(1)-(6) (Vernon Supp. 2009).  The Court noted that "Harrell was . . .
notified of the costs assessed when the convicting court sentenced him"
and he was free to contest them at the time they were assessed.  Harrell, 286 S.W.3d
at 320.  However, the Court went
on to recognize there could be a greater risk of erroneous deprivation in
instances in which the amount in the withdrawal notification varied from the
amount in the underlying judgment or those instances where there were clerical
or other errors.  Id.  In
assessing the final factor, the government's interest, the Court addressed the
fiscal and administrative burdens of added or alternative procedures and
concluded that the Texas Department of Criminal Justice would face expending
more money than it would collect if it were required to conform to
"full-blown" statutory garnishment requirements.  Id.  In the Court's opinion, such a drawn-out
procedure might subvert the Legislature's goal of efficient
cost-collection.  Id.

Harrell had
been convicted of drug charges in 1997 and 2003.  In 2006, the convicting trial court signed an
order authorizing the Texas Department of Criminal Justice, Institutional
Division, to withdraw funds from his inmate trust account to pay for court
costs and fees for appointed counsel. 
Harrell was provided with copies of the withdrawal notifications.  He then moved to rescind the withdrawal
notifications alleging denial of due process. 
His motion was denied, and his direct appeal to this Court was dismissed
for want of jurisdiction on the ground that no statutory mechanism was
available for appealing a withdrawal notification.  See
Harrell v. State, Nos. 07-06-0469-CR, 07-06-0470-CR, 2007 Tex.App. LEXIS 6416, at *3 (Tex.App.--Amarillo
Aug. 13, 2007), rev'd,
286 S.W.3d 315 (Tex. 2008). 

            In reversing this Court and rendering
judgment affirming the trial court's Order Denying Harrell's Motion to Rescind,
the Supreme Court held that due process entitles an inmate to receive notice[2]
and an opportunity to be heard, even though those requirements might be
accorded the inmate after funds are withdrawn. 
Harrell, 286 S.W.3d at 321.  It concluded that because Harrell had
received notice (a copy of the withdrawal notification) and an opportunity to be heard[3] (the motion to rescind), he had received all that due process
required.  Id.  The Court added, "[t]he Constitution
does not require pre-withdrawal notice or a comprehensive civil garnishment
proceeding."  Id.

             On the limited record before this Court, we
are unable to determine if Hodo has been given all that due process
requires.  Specifically, we are unable to
determine whether Hodo has been (1) provided the necessary underlying
documentation, and (2) afforded an adequate opportunity "to compare the
amounts assessed by the trial court [in the underlying criminal proceedings] to
the amount[s] withdrawn and alert the court of any alleged errors."  See id.  

            If an appellate court is uncertain
about the intent of an order to finally dispose of all claims, it can abate the
appeal to permit clarification by the trial court.  See
Tex. R. App. P. 27.2.  Because the trial court has not entered an
appealable order either granting or denying a motion to confirm, modify,
correct, or rescind the prior withdrawal notification, we find Hodo's notices
of appeal to be premature.  See
Williams v. State, Nos. 07-10-0091-CV, 07-10-0100-CV, 07-10-0101,
2010 Tex.App. LEXIS 2998, at *8-9,
(Tex.App.--Amarillo April 22, 2010, no pet. h.).  

            Accordingly, this Court sua sponte abates
this appeal for 180 days from the date of this order to allow Hodo time to take
such action as is necessary to (1) obtain the necessary documentation of the
underlying court order; (2) compare the underlying court order to the
withdrawal notification; (3) file an appropriate motion to modify, correct, or
rescind the withdrawal notification; (4) present that motion to the trial
court; (5) schedule any necessary hearing; and (6) obtain from the trial court
a final appealable order addressing that motion.  See
Tex. R. App. P. 27.2; see
also Iacono
v. Lyons, 6 S.W.3d 715 (Tex.App.--Houston [1st Dist.] 1999, no pet.) (finding appeal prematurely filed and abating and remanding
to permit the jurisdictional defect to be cured).  All appellate timetables will begin to run
from the date a final, appealable order is signed.

            It is so ordered.

                                                                                    Per
Curiam

 

 

 











[1]This document is not an "order" in the
traditional sense of a court order, judgment, or decree issued after notice and
hearing in either a civil or criminal proceeding.  The controlling statute, Tex. Gov't Code Ann. § 501.014(e)
(Vernon Supp. 2009), describes the process as a "notification by a
court" directing prison officials to withdraw sums from an inmate's trust
account, in accordance with a schedule of priorities set by the statute, for
the payment of "any amount the inmate is ordered to pay by order of the
court."  See id. at § 501.014(e)(1)-(6); see also Harrell v. State,
286 S.W.3d 315, 316 n.1 (Tex. 2009). 
This document is more akin to a judgment nisi.  A judgment nisi, commonly used in bond
forfeiture proceedings, is a provisional judgment entered when an accused fails
to appear for trial.  A judgment nisi
triggers the issuance of a capias and it serves as notice of the institution of a bond
forfeiture proceeding.  It is not final
or absolute, but may become final.  See
Safety Nat'l Cas. Corp. v. State, 273 S.W.3d 157, 163 (Tex.Crim.App. 2008).  Nisi means "unless," so a judgment
nisi is valid unless a party takes action causing it to be withdrawn.  Id.  Similarly, a withdrawal notification
issued pursuant to section 501.014(e), triggers a trust fund withdrawal, serves
as notice of the collection proceeding, and continues to operate unless the
inmate takes action causing the notification to be withdrawn.  Therefore, rather than refer to that document
as an order, we prefer to use the term "withdrawal notification" to
avoid confusion with an underlying court order or judgment ordering the payment
of a sum falling within at least one of the six priority categories listed in
the statute.





[2]In assessing the risk of erroneous deprivation of
property, the Supreme Court, in Harrell, considered the risk to be "modest" because notice under
the statute is "based on an amount identified in a prior court
document."  Harrell, 286 S.W.3d at 320 (emphasis
added).  The Court went on to comment
that the risk would be minimized if the trial court included a copy of the
underlying order or judgment that assessed costs when it issues a withdrawal
notification.  We wholeheartedly adopt
the Supreme Court's recommendation in this regard.  

We further note that the mere assessment of attorney
fees does not make them collectable through this process.  Under article 26.05(g) of the Texas Code of
Criminal Procedure, the trial court has authority to order reimbursement of
appointed attorney fees only if the court makes a fact-specific determination
that a defendant has financial resources that enable him to offset, in part or
in whole, the costs of the legal services provided.  See Tex.
Code Crim. Proc. Ann. art.
26.05(g) (Vernon Supp. 2009); see also Mayer v. State, No. PD-0069-09,
2010 Tex.Crim.App. LEXIS 100, at *11  (Tex.Crim.App. March 24, 2010).





[3]While the court of appeals's opinion is silent on whether a hearing was held
on Harrell's motion to rescind, Harrell, 2007 Tex.App. LEXIS 6416, at *3, the trial court
did enter a specific order denying his motion to rescind the withdrawal
notification.  We read the Supreme
Court's opinion as assuming that, by this process, Harrell was given "an
opportunity to be heard."  Harrell, 286 S.W.3d at 321.