**Joe Lee BUSTER, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 12–02–00229–CR.

Court of Appeals of Texas,
Tyler.

June 30, 2004.

Rehearing Overruled July 30, 2004.

1. Given the standard of review and our disposition of the issues, we need not address the relocation factors.

David Cervantes, for appellant.

Paul H. Guillotte Jr., Crockett, for appellee.

Panel consisted of WORTHEN, C.J., GRIFFITH, J. and DeVASTO, J.

## OPINION

JAMES T. WORTHEN, Chief Justice.

Joe Lee Buster ("Appellant") appeals his conviction for assault on a public serv-

ant. Appellant presents four issues on appeal. We affirm.

### BACKGROUND

Appellant was charged by indictment with "intentionally, knowingly, and recklessly caus[ing] bodily injury to Kathy Caldwell by striking her in the face" on or about July 20, 2000.[1] The indictment alleged that, at the time of the assault, Appellant knew that the victim, Kathy Caldwell ("Caldwell"), was a public servant, a mental health liaison employed by the University of Texas Medical Branch ("UTMB") and assigned to the Texas Department of Criminal Justice, Institutional Division ("TDCJ") in the psychology department of the Eastham Unit, and that Caldwell was lawfully discharging an official duty, interviewing inmates.[2] Further, the indictment contained two felony enhancement paragraphs.

Before trial, the court held a pretrial hearing. At the hearing, Appellant stated that he wished to represent himself because he had an "insurmountable" conflict of interest with his attorney. The judge acknowledged Appellant's right to represent himself, and a colloquy occurred as follows:

THE COURT: First off, what educational background do you have?

[APPELLANT]: Sir, I've completed the 11th grade in school. I have got my GED. I have got two years of college.

THE COURT: Have you ever gone to— have any of those courses dealt with legal matters?

---

**1.** A person commits the offense of assault if he intentionally, knowingly, or recklessly causes bodily injury to another. TEX. PEN.CODE ANN. § 22.01(a) (Vernon 2003).

**2.** Assault under TEX. PEN.CODE ANN. § 22.01(a) is a Class A misdemeanor unless the offense is committed against a person the actor knows

is a public servant while the public servant is lawfully discharging an official duty. TEX. PEN.CODE ANN. § 22.01(b)(1). If assault is committed against a public servant, the offense is a felony of the third degree. TEX. PEN.CODE ANN. § 22.01(b).

[APPELLANT]: No, sir, I haven't.

THE COURT: Well, the problem with an unlawyer representing someone or themselves—of course, you can only represent yourself—is that there are certain procedural laws—there are two types of laws. Basically there is procedural laws and there is substantive laws.

[APPELLANT]: Yes, sir.

THE COURT: And someone that's not trained in the law could well be in a position to have a valuable procedural right or have a substantive right under substantive law. And the danger of self representation is that without any training in the matter you would not know—

[APPELLANT]: Right.

THE COURT:—of that law or that procedural rule that could be used in your benefit.

[APPELLANT]: Yes.

THE COURT: Do you understand that danger?

[APPELLANT]: I do, sir. Yes, sir, I do.

THE COURT: Of course, the danger in representing yourself is that there will be some procedural matter that you will overlook or some substantive right that you won't know about, and because you don't know about it, you could be convicted. Whereas someone that is trained in the law and experienced—

[APPELLANT]: Right.

THE COURT:—in the law may well be able to keep you from being convicted. Do you understand that danger?

[APPELLANT]: Yes, sir.

THE COURT: Well, notwithstanding that danger, and the fact that you understand and know about it, are you still insisting on representing yourself?

[APPELLANT]: Yes, sir, I do.

THE COURT: Well, it appears to be that you—I have given you the admonitions required by the Supreme Court in *California v. Faretta.* Counsel, do you know of any other admonitions I need to give him? I am addressing the State and Defendant's attorney?

[PROSECUTOR]: None from the State, Your Honor.

[DEFENSE COUNSEL]: I don't know of any others either, Your Honor.

THE COURT: All right. Sir, I am going to permit you to represent yourself hereafter then, and I am going to sign an order.

At trial before another judge, Appellant appeared *pro se* and the trial court acknowledged Appellant's insistence on representing himself. Appellant pleaded "not guilty." During opening argument, Appellant admitted committing the offense, but argued that his actions were unintentional because of his diminished capacity or mental incapacity. During Caldwell's testimony, she acknowledged that she is a mental health liaison for UTMB assigned to the Eastham Unit. As a mental health liaison, Caldwell receives requests from inmates, interviews the inmates, and then "triages" the inmates to either a psychologist or psychiatrist. On July 20, 2000, Caldwell was interviewing inmates. During his interview with Caldwell, Appellant requested a transfer. After Caldwell explained to Appellant that he did not qualify for a transfer, he became very upset and slapped Caldwell in the face. At trial, Caldwell identified Appellant as the person who struck her in the face on July 20, 2000 while she was working as a mental health liaison for UTMB at the Eastham Unit in Houston County, Texas.

Joy Jackson ("Jackson") testified that she works for UTMB at the Eastham Unit. She stated that she and Caldwell work in the same office and that she was present in the office when the alleged assault occurred. Jackson identified Appellant as the person she knew as Joe Lee Buster who was in the office when the incident occurred. Mark Hanley ("Hanley"), a lieutenant at the Eastham Unit, testified that, on July 20, 2000, he arrived at the psychiatric unit and found Caldwell, in her office, visibly shaking. She stated that she had been assaulted. Further, both Caldwell and Jackson declared that offender Buster assaulted Caldwell. Hanley identified Appellant as offender Buster. Ed Whitehead ("Whitehead"), employed by the Office of the Inspector General, Investigations Division, at the Eastham Unit, spoke to the inmate suspected of assaulting Caldwell. Whitehead took a statement from Appellant on July 24, 2000 in which Appellant admitted striking Caldwell. Further, Appellant admitted going to the "psych" department to request a transfer from the Eastham Unit.

During Appellant's direct examination, Raphael Otero ("Otero"), a licensed psychologist, testified that he gave Appellant a psychological evaluation in October of 1995 in order to determine his competency to stand trial. According to Otero, Appellant was depressed, but not psychotic; his thought content and process was logical, coherent, and relevant; his social judgment, intelligence, memory, attention, and ability to solve problems were in the functional range; and he was able to communicate effectively. Otero testified that additional stress or depression would only lead to deeper levels of depression, "but not specifically to diminished capacity." Further, Otero found no signs of diminished capacity in Appellant. In relation to his opinion and recommendations, Otero testified regarding his knowledge of Appellant's prior offenses and charges.

On August 7, 2002, a jury convicted Appellant of assault on a public servant as charged in the indictment. During the punishment phase, Appellant pleaded "untrue" to two prior felony convictions in Texas, attempted murder and murder with malice. Michael Merchant ("Merchant"), a criminal investigator for the Special Prosecution Unit certified for fingerprint identification, testified that Appellant's known fingerprints matched the fingerprints of two penitentiary packets submitted by the Texas Department of Public Safety. Appellant offered no witnesses. During closing arguments, the State's attorney referred to the two prior felony convictions in Texas, and another offense committed in Arkansas, assault with intent to commit murder. The State requested punishment of life in prison. Appellant argued that a life sentence was excessive. Finding both enhancement allegations true, the jury assessed Appellant's punishment at sixty years of imprisonment.[3]

## WAIVER OF COUNSEL

In his first issue, Appellant contends that there is insufficient evidence to support the finding by the trial court that Appellant made a knowing and intelligent waiver of his Sixth Amendment right to counsel. The State disagrees and argues

---

3. Before enhancement, the punishment range for Appellant's third degree felony was for a period of not more than ten years or less than two years of imprisonment and, in addition, a fine not exceeding $10,000. TEX. PEN.CODE ANN. § 12.34 (Vernon 2003). However, because both enhancement allegations were found to be true, Appellant's punishment range increased to life or for a period of not more than ninety-nine years or less than twenty-five years. TEX. PEN.CODE ANN. § 12.42(d) (Vernon 2003).

that the trial court conducted the necessary hearing.

### Applicable Law

The Sixth and Fourteenth Amendments to the United States Constitution guarantee that an accused may dispense with counsel and represent himself. *Faretta v. California,* 422 U.S. 806, 821, 95 S.Ct. 2525, 2534, 45 L.Ed.2d 562 (1975); *Collier v. State,* 959 S.W.2d 621, 625 (Tex. Crim.App.1997). In order to represent himself, the accused must "knowingly and intelligently" relinquish the traditional benefits associated with the right to counsel. *Faretta,* 422 U.S. at 835, 95 S.Ct. at 2541. The accused should be made aware of the dangers and disadvantages of self-representation so that the record will establish that "he knows what he is doing and his choice is made with eyes open." *Id.* (citing *Adams v. United States ex rel. McCann,* 317 U.S. 269, 279, 63 S.Ct. 236, 242, 87 L.Ed. 268 (1942)). In other words, to be constitutionally effective, the accused's decision must be made (1) competently, (2) knowingly and intelligently, and (3) voluntarily. *Collier,* 959 S.W.2d at 625. To assure protection of this fundamental right, appellate courts indulge every reasonable presumption against waiver of counsel. *Jordan v. State,* 571 S.W.2d 883, 884 (Tex.Crim.App.1978).

While the court of criminal appeals does not require a formula or script to establish a knowing and intelligent waiver, a trial judge must actively assess an accused's waiver of counsel. *Blankenship v. State,* 673 S.W.2d 578, 583 (Tex.Crim. App.1984). According to the court of criminal appeals, a valid waiver must be made "with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments, thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter." *Id.* (quoting *Von Moltke v. Gillies,* 332 U.S. 708, 723, 68 S.Ct. 316, 323, 92 L.Ed. 309 (1948)). Further, the trial court must admonish the accused of the practical disadvantages of self-representation, including the fact that he would not be granted any special consideration or relief from the technicalities of the rules of evidence and procedure solely because he elects to appear *pro se. Freeman v. State,* 970 S.W.2d 55, 57 (Tex.App.-Tyler 1998, no pet.) (citing *Johnson v. State,* 760 S.W.2d 277, 279 (Tex.Crim.App.1988)). However, if the accused persists in appearing *pro se* after being properly admonished, the trial court must grant his wish. *Id.* at 58 (citing *Johnson,* 760 S.W.2d at 278).

### Analysis

The record does not contain an arraignment of Appellant nor was he advised of the nature of the charges against him and the statutory offenses included within those charges. *See Blankenship,* 673 S.W.2d at 583. The judge did not advise Appellant of the range of allowable punishments or of possible defenses to the charges and mitigating circumstances. *See id.* Further, the judge did not specifically admonish Appellant that he would not be granted any relief from the technicalities of the rules of evidence and procedure, although the judge's comments may have implicitly warned Appellant. *See Freeman,* 970 S.W.2d at 57 (citing *Johnson,* 760 S.W.2d at 279). Even though the court of criminal appeals has refused to adopt a formula or script to determine a knowing and intelligent waiver, we cannot conclude that an admonishment concerning unfamiliarity with procedural and substantive laws and rights only and covering barely two pages of the statement of facts is sufficient. *Cf. Collier,* 959 S.W.2d at 626 (admonishment sufficient where the trial

court elicited the accused's educational background, and explained the granting of his request, the charges against him, and the possible range of punishment, that he would not be granted special consideration respecting the technical rules of evidence and procedure, and that he might be disadvantaged at trial and appeal); *Burgess v. State,* 816 S.W.2d 424, 427 (Tex.Crim.App. 1991) (admonishment sufficient where the trial court elicited the accused's educational background and previous self-representation, and advised the accused that the rules of evidence and procedure would apply to him as to a lawyer, that it would treat his objections the same as a lawyer, that he would be under the same rules of procedure and conduct required of a lawyer, and that it would not "cut [him] any slack" and would hold him to the same standard as a lawyer).

Because Appellant was improperly and inadequately admonished by the trial judge, his waiver of counsel was not made knowingly and intelligently and, thus, was constitutionally ineffective. *See Collier,* 959 S.W.2d at 625. Accordingly, the trial court erred by failing to admonish Appellant sufficiently. However, we must determine if the trial court's error was harmful.

### Harm Analysis

In cases of constitutional error, a reviewing court applies Texas Rule of Appellate Procedure 44.2(a). *Fulbright v. State,* 41 S.W.3d 228, 235 (Tex.App.-Fort Worth 2001, pet. ref'd). A constitutional error within the meaning of Rule 44.2(a) is an error that directly offends the United States or Texas constitution, without regard to any applicable statute or rule. *Tate v. State,* 988 S.W.2d 887, 890 (Tex. App.-Austin 1999, pet. ref'd). Error in the trial court's admonishments regarding self-representation is a non-structural constitutional error subject to a harm analysis. *Easton v. State,* No. 14–99–01145–CR,

2001 WL 1289945 at *8 (Tex.App.-Houston [14th Dist.] Oct. 25, 2001, pet. ref'd) (not designated for publication). According to Rule 44.2(a), we must reverse the trial court's judgment unless we determine beyond a reasonable doubt that the alleged error did not contribute to Appellant's conviction or punishment. Tex.R.App. P. 44.2(a); *Fulbright,* 41 S.W.3d at 236 (citing *Mosley v. State,* 983 S.W.2d 249, 259 (Tex. Crim.App.1998)). Because it is a reviewing court's responsibility to decide whether the error had some adverse effect on the proceedings, Appellant has no burden to show harm. *Johnson v. State,* 43 S.W.3d 1, 4 (Tex.Crim.App.2001). Therefore, we must determine beyond a reasonable doubt if Appellant's ineffective waiver and lack of counsel contributed to his conviction or punishment.

Appellant admitted in opening arguments that he committed the offense. Caldwell identified Appellant as the person who struck her in the face. Jackson testified that Appellant was in the office shared by Caldwell and Jackson when the incident occurred. Both Caldwell and Jackson told Hanley that Appellant assaulted Caldwell. In his statement taken by Whitehead, Appellant admitted striking Caldwell. Finally, Otero testified that Appellant was depressed, but that he found no signs of diminished capacity in Appellant. Even if Appellant had been properly admonished and decided not to waive counsel, the record contains overwhelming evidence of Appellant's guilt. Therefore, we conclude that the trial court's error in improperly admonishing Appellant did not, beyond a reasonable doubt, contribute to his conviction.

In the punishment phase of the trial, Appellant pleaded "untrue" to two prior felony convictions in Texas. However, Merchant positively matched Appellant's known fingerprints with the fingerprints of

two penitentiary packets. Appellant's alleged prior felony convictions in Texas were for attempted murder and murder with malice. Further, the State's attorney mentioned that Appellant committed another offense in Arkansas, assault with intent to commit murder. Even if Appellant had been properly admonished and decided not to waive counsel, Appellant's alleged prior felony convictions and violent past would have been disclosed to the jury. Therefore, we conclude that the trial court's error in improperly admonishing Appellant did not, beyond a reasonable doubt, contribute to his punishment. Accordingly, Appellant's first issue is overruled.

### JURY CHARGE

 In his second issue, Appellant contends that the jury charge failed to submit the issue of whether Caldwell was a "public servant," depriving him of his right to a finding of guilt beyond a reasonable doubt on all elements of the offense. Thus, Appellant argues that he suffered egregious harm. The State contends that Appellant failed to object to the jury charge. Further, the State argues that even though the jury charge included an instruction that a mental health liaison was a public servant, it was still required to prove that Caldwell was a mental health liaison. Therefore, the State was not relieved of any burden of proof in this case.

 The purpose of a jury charge is to inform the jury of the relevant law and guide them in its application to the case. *Hutch v. State*, 922 S.W.2d 166, 170 (Tex.Crim.App.1996). A trial court is statutorily mandated to deliver to the jury a written charge distinctly setting forth the law applicable to the case. TEX.CODE CRIM. PROC. ANN. art. 36.14 (Vernon Supp.2004). A judge has no discretion to ignore statutory requirements. *Edwards v. State*, 10

S.W.3d 699, 702 (Tex.App.-Houston [14th Dist.] 1999), *pet. dism'd*, 67 S.W.3d 228 (Tex.Crim.App.2002) (per curiam) (citing *McGee v. State*, 711 S.W.2d 257 (Tex.Crim. App.1986)).

The elements of assault on a public servant are (1) a person, (2) intentionally, knowingly, or recklessly, (3) causes bodily injury to a public servant, (4) who is known by the actor to be a public servant, (5) while the public servant is lawfully discharging an official duty. *See* TEX. PEN. CODE ANN. § 22.01(a), (b)(1). The term "public servant" was defined in the jury charge as a person elected, selected, appointed, employed, or otherwise designated as an officer, employee, or agent of government. Additionally, the jury charge included an instruction that "a Mental Health Liaison is a public servant." Further, the jury charge stated that, in order to find Appellant guilty of assault on a public servant, the jury must find, beyond a reasonable doubt, that

the defendant ... intentionally, knowingly and recklessly cause[d] bodily injury to Kathy Caldwell by striking the said Kathy Caldwell's face and the said Kathy Caldwell was then and there a mental health liaison employed by the University of Texas Medical Branch assigned to the Texas Department of Criminal Justice–Institutional Division, Eastham Unit, in the lawful discharge of her official duty, to wit: interviewing inmates and the said defendant had been informed and knew Kathy Caldwell was a mental health liaison.

Thus, according to the charge's instructions, in order to find Appellant guilty of the offense, the jury was required to find that Caldwell was a mental health liaison, that she was performing her official duties, and that Appellant knew Caldwell was a mental health liaison. The instruction that a mental health liaison is a public servant

is a correct statement of the law under the facts presented and was not a question of fact for the jury. *See* TEX. PEN.CODE ANN. § 1.07(41)(A) (Vernon 2003). Consequently, we conclude that the jury charge correctly states the law applicable to the case. Accordingly, Appellant's second issue is overruled.

### EVIDENTIARY SUFFICIENCY

In his third issue, Appellant argues that the evidence is legally and factually insufficient to support the conviction because there was no evidence that Caldwell was a "public servant."

### *Standard of Review*

"Legal sufficiency is the constitutional minimum required by the Due Process Clause of the Fourteenth Amendment to sustain a criminal conviction." *Escobedo v. State,* 6 S.W.3d 1, 6 (Tex.App.-San Antonio 1999, no pet.) (citing *Jackson v. Virginia,* 443 U.S. 307, 315–16, 99 S.Ct. 2781, 2786–88, 61 L.Ed.2d 560 (1979)). The standard of review is whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789; *Lacour v. State,* 8 S.W.3d 670, 671 (Tex.Crim.App.2000). The evidence is viewed in the light most favorable to the verdict. *Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789; *Lacour,* 8 S.W.3d at 671.

After a reviewing court has found that the evidence is legally sufficient to support the verdict, the court may go forward with a review of the factual sufficiency of the evidence. *Clewis v. State,* 922 S.W.2d 126, 133 (Tex.Crim.App.1996). In reviewing factual sufficiency, a court examines all the evidence "without the prism of 'in the light most favorable to the prosecution' and sets aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Id.* at 134. The court must inquire whether a neutral review of all the evidence, both for and against the verdict, establishes that the proof of guilt is so manifestly weak as to undermine faith in the jury's resolution, or the proof of guilt, although sufficient if taken alone, is greatly offset by conflicting proof. *Johnson v. State,* 23 S.W.3d 1, 11 (Tex.Crim.App.2000).

In a criminal conviction, sufficiency of the evidence is determined by the elements of the crime as defined by the hypothetically correct jury charge. *Malik v. State,* 953 S.W.2d 234, 240 (Tex.Crim.App. 1997). The correct charge "would be one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*

### *Analysis*

The elements of assault on a public servant are (1) a person, (2) intentionally, knowingly, or recklessly, (3) causes bodily injury to a public servant, (4) who is known by the actor to be a public servant, (5) while the public servant is lawfully discharging an official duty. *See* TEX. PEN. CODE ANN. § 22.01(a), (b)(1). As discussed above, the record shows that Caldwell was a mental health liaison employed by UTMB assigned to the Eastham Unit, and that her official duty was interviewing inmates. Jackson testified that she works for UTMB at the Eastham Unit and that she and Caldwell work in the same office. Hanley testified that he found Caldwell in the psychiatric unit, and Appellant admitted going to the "psych" unit to request a transfer. From this testimony, a jury could have concluded that Caldwell was a public servant. Therefore, viewing the evidence in the light most favorable to the jury's verdict, we conclude that a rational trier of fact could have found the elements

of assault on a public servant beyond a reasonable doubt.

 Having determined that the evidence is legally sufficient to support the verdict, we address factual sufficiency. In conducting our review, we conclude that there is no contradictory evidence in the record. Therefore, in reviewing the entire record, both for and against the jury's verdict, we do not find that proof of Appellant's guilt is so manifestly weak as to undermine faith in the jury's resolution, or that the proof of guilt, although sufficient if taken alone, is greatly offset by conflicting proof. Accordingly, Appellant's third issue is overruled.

### PROPORTIONALITY OF SENTENCE

 In his fourth issue, Appellant contends that his sixty-year sentence is grossly disproportionate for the particular offense and is, therefore, cruel and unusual punishment under the United States and Texas constitutions. The State disagrees and argues that a sentence falling within the range of punishment for an offense set by statute does not violate prohibitions against cruel and unusual punishment. Moreover, the State contends that Appellant failed to preserve this issue for review.

 If the accused made no objections to the trial court regarding the issue of cruel and unusual punishment, he has waived that issue with respect to any alleged violation of his rights under the Texas Constitution. *Jacobs v. State*, 80 S.W.3d 631, 632–33 (Tex.App.-Tyler 2002, no pet.) (citing TEX.R.APP. P. 33.1); *Rhoades v. State*, 934 S.W.2d 113, 120 (Tex.Crim.App.1996). Appellant did not object to the sentence as cruel and unusual punishment and, therefore, has waived this issue. Further, Appellant failed to analyze, argue, or provide authority to establish that his protection under the Texas

Constitution exceeds or differs from that provided to him by the federal constitution. *See Arnold v. State*, 873 S.W.2d 27, 33 (Tex.Crim.App.1993); *Chilman v. State*, 22 S.W.3d 50, 54 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd). Thus, we will not address Appellant's state constitutional argument and, instead, will turn our attention to Appellant's Eighth Amendment argument. *Arnold*, 873 S.W.2d at 33; *Chilman*, 22 S.W.3d at 54.

 A gross proportionality principle is applicable to sentences for years. *Davis v. State*, 119 S.W.3d 359, 363 (Tex. App.-Waco 2003, pet. ref'd). The legislature has the power to define crimes and prescribe penalties. *Jacobs*, 80 S.W.3d at 633. Further, if the sentence falls within the limits prescribed by a valid statute, the punishment is not excessive, cruel, or unusual. *Id.* (citing *Harris v. State*, 656 S.W.2d 481, 486 (Tex.Crim.App.1983); *Jordan v. State*, 495 S.W.2d 949, 952 (Tex. Crim.App.1973)). In determining whether a sentence is grossly disproportionate, we consider not only the present offense but also an accused's criminal history. *Davis*, 119 S.W.3d at 363.

In this case, the evidence shows that Appellant struck Caldwell in the face, and was found guilty of assault on a public servant. The punishment range for the offense committed is life or for a period of not more than ninety-nine years or less than twenty-five years. TEX. PEN.CODE ANN. § 12.42(d). The punishment assessed is within the range set forth by the legislature. Further, the jury found both enhancement paragraphs for felony convictions in Texas to be true. Appellant's prior felony convictions were for attempted murder and murder with malice. Additionally, the State pointed out that Appellant committed another offense in Arkansas, assault with intent to commit

murder. Because the sentence was within the range of punishment and evidence was presented regarding Appellant's previous violent felonies, the punishment is not prohibited as cruel, unusual, or excessive *per se.* *See Jacobs,* 80 S.W.3d at 633. Moreover, based upon Appellant's sentence and prior criminal history, we conclude that Appellant's sentence is not grossly disproportionate in violation of the Eighth Amendment of the United States Constitution. *See Davis,* 119 S.W.3d at 363 (citing *Harmelin v. Michigan,* 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991)). Finally, a comparative analysis with sentences imposed on others in Texas, as well as sentences imposed on others for the same crime in other jurisdictions, as discussed in *Solem v. Helm,* 463 U.S. 277, 290–92, 103 S.Ct. 3001, 3010, 77 L.Ed.2d 637 (1983), is not required where we do not find the sentence to be disproportionate. *See id.* at 364, 103 S.Ct. 3001 (citing *McGruder v. Puckett,* 954 F.2d 313, 316 (5th Cir.1992)). Accordingly, Appellant's fourth issue is overruled.

## CONCLUSION

Having overruled Appellant's first, second, third, and fourth issues, the *judgment* of the trial court is *affirmed.*