# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-10-00218-CR

**Ruben Guerrero, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT
NO. D-1-DC-09-300784, HONORABLE WILFORD FLOWERS, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Ruben Guerrero of the offense of assault family violence. *See* Tex. Penal Code Ann. § 22.01(b)(2) (West Supp. 2010). Punishment, enhanced by two prior convictions for assault family violence, was assessed at 65 years' imprisonment. In three points of error, Guerrero asserts that the district court abused its discretion in excluding certain evidence and claims that the sentence assessed constitutes cruel and unusual punishment. We will affirm.

## BACKGROUND

Guerrero was accused of assaulting his wife, Y.R., who testified at trial. The jury heard evidence that on the night of March 27, 2009, Guerrero was driving Y.R. to a nightclub where she was scheduled to work. According to Y.R., instead of taking her to the nightclub, Guerrero "passed the road that is supposed to take me to my job" and told Y.R. that "he was going to go and prostitute me" and "teach me how to earn my money." Guerrero then instructed Y.R. to take off

her bra and underwear. Y.R. testified that she protested, but Guerrero began hitting her until she complied. Guerrero drove to a bar, opened the car door, grabbed Y.R., slapped her in the face, and then "threw [her] to the ground." When two men who were walking nearby tried to assist Y.R., Guerrero became upset and "pulled [her] back in the car."

Guerrero then drove to an H.E.B. and "offered" Y.R. to a man who was pushing shopping carts. Y.R. recalled how the man had told Guerrero that he "wanted to see" Y.R. and that Guerrero had responded to this request by lifting up Y.R.'s dress and exposing her body to the man. Y.R., who was crying, asked the man to leave, and the man walked away.

After driving to other locations around Austin, Guerrero finally took Y.R. to another nightclub. There, Guerrero walked Y.R. through the parking lot, started lifting up her dress, and told her "that when we go inside, he's going to be able to get someone to dance with me since my dress is up." Once inside, Y.R. "went straight to the bathroom" and called her sister "to get the children out of the house." Y.R. testified that she was afraid that "something" would happen when she returned home. When Y.R. walked out of the restroom, Guerrero was waiting for her. He took Y.R. to the corner of one of the bars and asked her to dance with people. Y.R., who was still crying, refused and returned to the restroom. When she exited the restroom, the owner of the club and one of the club's employees noticed that she was visibly upset and led her into their office, where she explained what had happened. They then attempted to locate Guerrero, but he had apparently left the club and could not be found. A friend of Y.R.'s drove her home, and once there, Y.R. called the police and reported the incident.

2

Other evidence considered by the jury included the testimony of the police officer who had responded to Y.R.'s 911 call, the detective who had investigated the assault, the police officer who had located and arrested Guerrero, and the two individuals at the nightclub who had spoken with Y.R. Also admitted into evidence were police photographs showing Y.R.'s visible injuries, a protective order affidavit that Y.R. had filed against Guerrero following the incident, and an affidavit of non-prosecution that Y.R. had signed in June 2009. Y.R. testified that Guerrero had mailed her the affidavit and instructed her to sign it. Y.R., who was not a United States citizen,[1] explained that although she had signed the document, she could not read English and thus did not understand what was written in it.

Guerrero testified in his defense and denied driving Y.R. to work on the night in question and assaulting her. On cross-examination, Guerrero admitted to an extensive criminal history, including prior convictions for assault family violence and driving while intoxicated.

The jury found Guerrero guilty as charged, and the case proceeded to punishment. Guerrero pleaded true to the two enhancement paragraphs alleged in the indictment, and the jury heard additional evidence related to Guerrero's history of violence against women, including an alleged sexual assault of Y.R. The jury assessed punishment as noted above, and the district court sentenced Guerrero accordingly. Guerrero subsequently filed a motion for new trial, which was overruled by operation of law. This appeal followed.

---

[1] As we explain below, defense counsel attempted to make Y.R.'s immigration status a significant issue during trial.

## ANALYSIS

**Exclusion of evidence**

In his first point of error, Guerrero asserts that the district court abused its discretion in excluding documents published by the United States government relating to immigration. In his second point of error, Guerrero claims that the district court abused its discretion in excluding the transcript of a jailhouse telephone conversation between Guerrero and Y.R. concerning Y.R.'s immigration status. In response, the State first argues that Guerrero failed to preserve error regarding either complaint.

"To preserve error for appellate review, a party must make a timely and specific objection or motion at trial, and there must be an adverse ruling by the trial court." *Fuller v. State*, 253 S.W.3d 220, 232 (Tex. Crim. App. 2008); *see* Tex. R. App. P. 33.1(a). Additionally, in the case of a ruling that excludes evidence, the substance of the evidence must be "made known to the court by offer, or [be] apparent from the context within which questions were asked." Tex. R. Evid. 103(a)(2); *Holmes v. State*, 323 S.W.3d 163, 168 (Tex. Crim. App. 2009). The offer of proof may consist of a concise statement by counsel, or it may be in question-and-answer form. *Mays v. State*, 285 S.W.3d 884, 889 (Tex. Crim. App. 2009). If in the form of a statement, the proffer "must include a reasonably specific summary of the evidence offered and must state the relevance of the evidence unless the relevance is apparent, so that the court can determine whether the evidence is relevant and admissible." *Warner v. State*, 969 S.W.2d 1, 2 (Tex. Crim. App. 1998). An offer of proof also enables the appellate court to determine whether the exclusion was erroneous and harmful. *See Holmes*, 323 S.W.3d at 168.

4

During cross-examination of Y.R., defense counsel attempted to introduce the immigration publication as follows:

[Defense counsel]: I just want to be able to introduce documents from the U.S. Citizenship and Immigration Services. I believe they are self-authenticated under [rule of evidence] 901, Section 5, and I just want to make the State aware of that.

[Prosecutor]: Is it a treatise, or what is that?

[Defense counsel]: It's a publication by a governmental entity. [Rule of evidence] 902, Section 5 official publications.

[Prosecutor]: They are self-authenticating.

[The Court]: I know they are.

[Prosecutor]: However, what is the relevance?

[The Court]: I don't know what the document is. If you think there is a relevance question—

[Prosecutor]: There is nothing that—the witness wouldn't be able to understand this document.

[Defense counsel]: I want them . . . for the purpose of showing that there might be more there, and that those benefits are available to a person applying for their visa. I'm not arguing that she has read them or that she has—

[Prosecutor]: If she doesn't know anything about it, it doesn't speak to her motive.

. . . .

[The Court]: So you have established that she is not aware of these provisions?

5

[Defense counsel]:    I am not offering to establish that she is aware of them. I am offering them to show that that is available and that would create a possible motive for her to make the allegations.

. . . .

[Prosecutor]:    If she's not aware, it does not show motive. These do not demonstrate motive if she doesn't know.

[The Court]:    You have not shown she is aware, unless you can establish that she should be or create some doubt as to some concerns with the admissibility question that she may really have and she is saying she has not. I sustain the objection at this time.

Defense counsel then moved on with her questioning and did not attempt to introduce the evidence again at a later time. The publication was never marked for appellate purposes and is not in the record.

Although defense counsel claimed that the publication was from the U.S. Citizenship and Immigration Services and that it showed what "benefits are available to a person applying for their visa," counsel never explained what those benefits were or how such benefits were relevant to show any bias or motive to testify on the part of the witness. Thus, "the substance of the evidence was [not] made known" to the district court as required by rule 103(a)(2). Moreover, because the publication was not marked for appellate purposes and is not in the record, we cannot determine whether the exclusion of the publication was erroneous or harmful. We cannot conclude that the district court abused its discretion in excluding evidence when the excluded evidence is unavailable for us to review.

We are similarly unable to review the transcript of the alleged telephone conversation between Guerrero and Y.R. During defense counsel's direct examination of Guerrero, the following occurred:

[Defense counsel]:   Did [Y.R.] ever—to your knowledge, how important is it for [Y.R.] to be able to get her immigration papers?

[Guerrero]:   I didn't find out the true importance until October 31 when she told me that her dream was to become a U.S. citizen and to live a better life, and she told me she was willing to do anything to do that.

[Defense counsel]:   May I approach, Your Honor?

[The Court]:   Sure.

[Defense counsel]:   Your Honor, I have a situation, and I think the State might be aware of this. I have requested a transcript on the translation of a telephone recording. . . . The transcript was done; however, [the interpreter's] purse was stolen last week, I believe, and in that purse was the actual CD with the recordings. So I have the transcript. . . . So the question is, will the State stipulate that this is a true translation and transcript of—

. . . .

[Prosecutor]:   What is it?

[Defense counsel]:   It is a conversation that took place on October 31 that he's referring to.

[Prosecutor]:   What are you going—

[Defense counsel]:   So the only other way I can bring this in would be to call [the interpreter] to come and testify that she heard the conversation and that's what she transcribed.

7

| [The Court]: | So what are you asking?  You are asking them to stipulate to this exactly? |
|---|---|
| [Defense counsel]: | Well, I am asking them to stipulate. |
| [Prosecutor]: | Not without—I haven't talked to this person to go there and check it.  This is the first time I am seeing this.  I can tell the Court there was, I think at least 20 phone calls made. |
| [The Court]: | So you don't know which one? |
| [Prosecutor]: | I have no idea which one this is. |
| [The Court]: | Did you have recordings of it? |
| [Prosecutor]: | I did have recordings of it.  I was trying to get the transcript because they were all in Spanish.  So I don't know what any of them were saying. |
| [The Court]: | So you have them, but then—you probably have this one.  You don't know which one it is. |
| [Prosecutor]: | Well, what defense counsel says, I know what she is talking about is that my discs were the ones that were stolen.  And I knew they were gone.  I have known—I was waiting for it to be transcribed. |
| . . . . | |
| [The Court]: | I don't know what is on it, so I don't know what to tell you to do.  Obviously they can't do it right now so you have to keep going. |

Defense counsel then proceeded to another line of questioning.  The copy of the transcript that counsel had in her possession was never marked for appellate purposes and is not in the record.

The only information defense counsel provided regarding the content of the transcript was that it contained a telephone conversation between Guerrero and Y.R. that had occurred

8

on October 31. Counsel did not explain what was said between the two or how the conversation was relevant to the case. Thus, the substance of the conversation was not made known to the district court, and there was no way for the district court to determine whether the conversation was relevant or admissible. Additionally, because the transcript is not in the record, there is no way for this Court to review the conversation to determine if its exclusion was erroneous or harmful. In fact, we cannot conclude that the district court actually "excluded" the evidence, as counsel failed to obtain an adverse ruling from the district court. Instead, the district court simply instructed counsel to "keep going." That is not an adverse ruling. *See Ramirez v. State*, 815 S.W.2d 636, 643 (Tex. Crim. App. 1991) (adverse ruling must be conclusive and "clear from the record" or error is waived); *Miller v. State*, 83 S.W.3d 308, 319 (Tex. App.—Austin 2002, pet. ref'd) (adverse ruling may be implied from record but only when court's actions or statements "unquestionably indicate a ruling"); *see also Stevens v. State*, 671 S.W.2d 517, 521 (Tex. Crim. App. 1984) (instruction to counsel to "move along" following objection not considered adverse ruling).

Having concluded that Guerrero failed to preserve error on his evidentiary complaints, we overrule his first and second points of error.

**Punishment**

In his third point of error, Guerrero asserts that his sentence of 65 years' imprisonment is grossly disproportionate to the offense committed and constitutes cruel and unusual punishment. The State responds that Guerrero failed to preserve any alleged error.

A claim of cruel and unusual punishment is waived unless an appellant first raises his objection to the trial court. *See, e.g.*, *Rhoades v. State*, 934 S.W.2d 113, 120 (Tex. Crim.

App. 1996); *Curry v. State*, 910 S.W.2d 490, 497 (Tex. Crim. App. 1995); *Schneider v. State*, 645 S.W.2d 463, 466 (Tex. Crim. App. 1983); *Steadman v. State*, 160 S.W.3d 582, 586 (Tex. App.—Waco 2005, pet. ref'd); *Buster v. State*, 144 S.W.3d 71, 81 (Tex. App.—Tyler 2004, no pet.). Guerrero made no objection to the sentence at the time it was pronounced, nor did he assert a specific claim of cruel and unusual punishment in his motion for new trial. Thus, any error has been waived.

However, even if Guerrero had preserved error, his complaint is without merit. As alleged, the offense of assault family violence is a third-degree felony. *See* Tex. Penal Code Ann. § 22.01(b)(2)(A). Such an offense is normally punishable by imprisonment for any term of not more than 10 years or less than 2 years. *See id*. § 12.34(a) (West Supp. 2010). Because Guerrero's punishment was enhanced by two prior felony convictions, he was subject to imprisonment as a habitual offender for either life or any term of not more than 99 years or less than 25 years. *See id*. § 12.42(d) (West Supp. 2010). In this case, the sentence of 65 years imposed by the jury falls well within the statutory range established by the legislature. As a general rule, when the punishment assessed comes within the range of punishment established by law, a penalty imposed within that range prescribed by the legislature will not be disturbed on appeal. *Nunez v. State*, 565 S.W.2d 536, 538 (Tex. Crim. App. 1978); *Holley v. State*, 167 S.W.3d 546, 549-50 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd).

A prohibition against grossly disproportionate punishment survives under the Eighth Amendment to the United States Constitution apart from any consideration of whether the punishment assessed is within the range established by the legislature. *See Solem v. Helm*, 463 U.S.

277, 290 (1983). However, based on the record before us, we cannot say that the sentence assessed in this case is grossly disproportionate to the gravity of the offense, the circumstances of which included Guerrero assaulting his wife to the extent that she was visibly injured, forcing her to remove her underwear, revealing her body to strangers in public, and "offering" her as a "prostitute" to other men. Additionally, Guerrero is a repeat offender, with prior felony convictions for assault family violence and driving while intoxicated.

We overrule Guerrero's third point of error.

## CONCLUSION

We affirm the judgment of the district court.

_____

Bob Pemberton, Justice

Before Chief Justice Jones, Justices Puryear and Pemberton

Affirmed

Filed:   June 3, 2011

Do Not Publish

11