

## NUMBER 13-11-00660-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

CHRISTOPHER BLACKBURN
A/K/A CHRISTOPHER BRETT BLACKBURN,                    Appellant,

v.

THE STATE OF TEXAS,                    Appellee.

### On appeal from the 252nd District Court
### of Jefferson County, Texas.

## MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Garza and Vela
### Memorandum Opinion by Justice Vela

A Jefferson County grand jury indicted appellant, Christopher Blackburn a/k/a Christopher Brett Blackburn, for assault-family violence. *See* TEX. PENAL CODE ANN. § 22.01(a)(1), (2)(B) (West 2011). Pursuant to a plea-bargain agreement, he pleaded guilty to the Class A misdemeanor offense of assault, *see id.* § 22.01(a)(1), and was

placed on deferred-adjudication community supervision for one year and fined $100. Following a revocation hearing, the trial court found appellant violated a condition of his community-supervision order and sentenced him to one year in the county jail. By three issues, appellant argues: (1) his sentence was disproportionate and unreasonable, in violation of the Eighth Amendment to the United States Constitution; (2) his sentence was disproportionate and unreasonable, in violation of Article 1, Section 13 of the Texas Constitution; and (3) the trial court abused its discretion in revoking his community supervision. We affirm.

## I. REVOCATION HEARING

During the revocation hearing, the trial court asked appellant, "Count 1 [of the motion to revoke] says that you committed the offense of assault family violence on or about the 14th day of August, 2011, in Jefferson County. Is Count 1 true or not true?" After appellant pleaded "Not true," the State called appellant's grandmother, Shirry Zachary, to the witness stand. She testified that in the morning of August 14, 2011, she was asleep in her apartment when appellant, who is a member of her household, grabbed the covers off of her bed. She stated, "I grabbed for my covers, and . . . he [appellant] shoved me." When the prosecutor asked her, "Do you think . . . he knew what he was doing?", she said, "No, he did not. . . . He was asleep." When she was asked, "So, it's your contention that he was just sleepwalking?", she said, "I believe he was because he . . . done it before." Upon hearing this, the prosecutor asked her, "You told Officer Mouton that he [appellant] yelled at you, that he punched you in the stomach, that he slammed you into a wall, that you had back pain and skin abrasions as a result of that assault." To

2

this, she said, "No, I did not." She testified, "He didn't shove me against the wall." She said appellant "shoved me . . . back." She stated, "That didn't cause me pain, no. Whenever he shoved me and he got back up, come at me, I grabbed the mop handle, and I pulled a grandma on him. . . ."

On cross-examination, when defense counsel asked Zachary, "[Y]ou testified that he only pushed you; is that correct?", she answered affirmatively. When defense counsel asked her, "[B]ut it didn't cause you any pain. Was that your testimony?", she said, "That didn't hurt me. What hurt me is when after I hit him, he body-slammed me."

Appellant denied shoving and body-slamming his grandmother. He stated that when she grabbed the blankets off of him, she scratched his chest.

## II. DISCUSSION

### A. Disproportionate Punishment

In issues one and two, appellant argues his sentence was disproportionate and unreasonable, in violation of the Eighth Amendment to the United States Constitution and Article 1, Section 13 of the Texas Constitution. Appellant does not argue that Article 1, Section 13 of the Texas Constitution provides any more or different protection than its federal counterpart. Accordingly, we examine this argument solely under the Eighth Amendment. *Rivera v. State*, 363 S.W.3d 660, 678 n.12 (Tex. App.—Houston [1st Dist.] 2011, no pet.); *see Buster v. State*, 144 S.W.3d 71, 81 (Tex. App.—Tyler 2004, no pet.); *see also Baldridge v. State*, 77 S.W.3d 890, 893–94 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd).

3

The Eighth Amendment, which forbids cruel and unusual punishment, contains a narrow proportionality principle prohibiting a sentence from being greatly disproportionate to the crime it punishes. *See Ewing v. California*, 538 U.S. 11, 20 (2003) (citing *Harmelin v. Michigan*, 501 U.S. 957, 996–97 (1991) (Kennedy, J., concurring in part and concurring in judgment)). Embodied within the Constitution's ban on cruel and unusual punishment is the "precept of justice that punishment for crime should be graduated and proportioned to [the] offense." *Weems v. United States*, 217 U.S. 349, 367 (1910). The Eighth Amendment does not require strict proportionality between crime and sentence; rather, it forbids only extreme sentences that are grossly disproportionate to the crime. *See Ewing*, 538 U.S. at 23. The precise contours of the "grossly disproportionate" standard are unclear, but it applies only in "exceedingly rare" and "extreme" cases. *See Lockyer v. Andrade*, 538 U.S. 63, 73 (2003).

In *Graham v. Florida*, 130 S.Ct. 2011 (2010), the Supreme Court stated that generally there are two classifications of proportionality challenges to sentences. "The first involves challenges to the length of term-of-years sentences given all the circumstances in a particular case." *Graham*, 130 S.Ct. at 2021. Under this approach, courts must determine "whether a sentence for a term of years is grossly disproportionate for a particular defendant's crime." *Id.* at 2022. "The second classification of cases has used categorical rules to define Eighth Amendment standards." *Id.* This classification consists of two subsets, one considering the nature of the offense, the other considering the characteristics of the offender. *Id.* Here, appellant argues his sentence is grossly disproportionate to the offense committed and is inappropriate to the offender under the

4

facts and circumstances presented.

Texas courts have traditionally held that, as long as the punishment assessed falls within the punishment range prescribed by the Legislature in a valid statute, the punishment is not excessive. *See Jordan v. State*, 495 S.W.2d 949, 952 (Tex. Crim. App. 1973); *Trevino v. State*, 174 S.W.3d 925, 928 (Tex. App.—Corpus Christi 2005, pet. ref'd); *see also Escochea v. State*, 139 S.W.3d 67, 80 (Tex. App.—Corpus Christi 2004, no pet.).[1] Appellant's sentence fell within the punishment range for a Class A misdemeanor. *See* TEX. PENAL CODE ANN. § 12.21 (West 2011) (stating, "An individual adjudged guilty of a Class A misdemeanor shall be punished by: (1) a fine not to exceed $4,000; (2) confinement in jail for a term not to exceed one year; or (3) both such fine and confinement."). However, that does not end the inquiry. Texas courts recognize that a prohibition against a grossly disproportionate sentence survives under the federal constitution apart from any consideration whether the punishment assessed is within the statute's punishment range. *Winchester v. State*, 246 S.W.3d 386, 388 (Tex. App.—Amarillo 2008, pet. ref'd); *Mullins v. State*, 208 S.W.3d 469, 470 (Tex. App.—Texarkana 2006, no pet.).

This Court has recognized that "the viability and mode of application of proportionate analysis . . . has been questioned since the Supreme Court's decision in *Harmelin v. Michigan*, 501 U.S. 957 (1991)." *Trevino*, 174 S.W.3d at 928 (citing *McGruder v. Puckett*, 954 F.2d 313, 315–16 (5th Cir. 1992) (discussing the various

---

[1]*Vera v. State*, Nos. 13-05-00169, 13-05-00170-CR, 2006 WL 5181930, at *3 (Tex. App.—Corpus Christi Aug. 29, 2008, pet. ref'd) (mem. op., not designated for publication).

opinions issued in *Harmelin* and their impact on the *Solem* decision[2])); *see Sullivan v. State*, 975 S.W.2d 755, 757–58 (Tex. App.—Corpus Christi 1998, no pet.) (discussing the implications of the *Harmelin* opinion and reviewing the proportionality of defendant's sentence under the *Solem* and *McGruder* tests). Assuming, *arguendo*, the viability of a proportionality review, as we did in *Sullivan,* we will apply both the *Solem* and *McGruder* tests to the facts of this case. *See Sullivan*, 975 S.W.2d at 757–58.[3] In both *Solem* and *McGruder,* we look first at the gravity of the offense and the harshness of the penalty. *Solem*, 463 U.S. at 290-91; *McGruder*, 954 F.2d at 316.

### 1. Gravity of the Offense

We judge the gravity of the offense in light of the harm caused or threatened to society and the offender's culpability. *Moore v. State*, 54 S.W.3d 529, 542 (Tex. App.—Fort Worth 2001, pet. ref'd) (citing *Solem*, 463 U.S. 291–92). With respect to the underlying offense, the indictment alleged, in relevant part, that on or about December 24, 2010, appellant intentionally, knowingly, and recklessly "cause[d] bodily injury to SHELBY PALMER, . . . by applying pressure to [Palmer's] throat and neck and by blocking [Palmer's] nose and mouth, impeding the normal breathing and circulation of the blood of [Palmer] and at the time of commission of the offense, [appellant] and [Palmer] were family members. . . ." Appellant pleaded guilty to the lesser-included offense of Class A misdemeanor assault, and the trial court placed him on deferred-adjudication community supervision for one year. By entering a plea to the offense, appellant

---

[2] *See Solem v. Helm*, 463 U.S. 272 (1983).

[3] *See also McGiffin v. State*, No. 13-05-00561-CR, 2006 WL 2294553, at *1 (Tex. App.—Corpus Christi, Aug. 10, 2006, no pet.) (mem. op., not designated for publication).

6

admitted his culpability. With respect to the harm caused or threatened to society, appellant committed a crime of violence against a person, who is alleged to be a family member. We conclude that the gravity of the offense weighs in favor of a finding that the punishment was not excessive.

### 2. Harshness of the Penalty

Appellant pleaded guilty to Class A misdemeanor assault. The Legislature considered this crime serious enough to deserve a punishment of up to one year in the county jail. Appellant's one-year sentence fell within the punishment range for a Class A misdemeanor. *See* TEX. PENAL CODE ANN. § 12.21. In light of the seriousness of the crime to which appellant pleaded guilty, combined with the evidence in the present case that appellant committed another crime of violence; i.e., body-slamming and shoving his grandmother, we cannot say his one-year sentence is disproportionate to his offense. We therefore find that his punishment is not grossly disproportionate to the offenses for which he was convicted. This finding ends our analysis under *McGruder*. *See McGruder*, 954 F.2d at 316; *see also Sullivan*, 975 S.W.2d at 757. Because there is no evidence in the appellate record of the sentences imposed for other similar crimes in Texas or for the same crimes in other jurisdictions, we cannot perform a comparative evaluation using the remaining *Solem* factors. *See Solem*, 463 U.S. at 292; *see also Sullivan*, 975 S.W.2d at 757-58. Therefore, we hold that appellant's punishment is neither grossly disproportionate nor cruel and unusual. Issues one and two are overruled.

7

**B. Sufficiency of the Evidence to Support Revocation**

In issue three, appellant contends the trial court abused its discretion in revoking appellant's community supervision because the evidence is legally insufficient to show he violated the terms of his community supervision.

**1. Standard of Review**

"The State has the burden of showing by a preponderance of the evidence that the defendant committed a violation of the conditions of community supervision." *Antwine v. State*, 268 S.W.3d 634, 636 (Tex. App.—Eastland 2008, pet. ref'd) (citing *Cobb v. State*, 851 S.W.2d 871, 873 (Tex. Crim. App. 1993); *Kulhanek v. State*, 587 S.W.2d 424, 426 (Tex. Crim. App. 1979)). "The trial court's order revoking community supervision is reviewed under an abuse of discretion standard." *Id.* (citing *Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006); *Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984)). "The trial court is the sole judge of the credibility of the witnesses and the weight given to their testimony, and the evidence is reviewed in the light most favorable to the trial court's ruling." *Id.* (citing *Cardona*, 665 S.W.2d at 493; *Garrett v. State*, 619 S.W.2d 172, 174 (Tex. Crim. App. 1981)). "If the State fails to meet its burden of proof, the trial court abuses its discretion in revoking the community supervision." *Id.* (citing *Cardona*, 665 S.W.2d at 493–94). "Proof by a preponderance of the evidence of any one of the alleged violations of the conditions of community supervision is sufficient to support a revocation order." *Id.* (citing TEX. CODE CRIM. PROC. ANN. art. 42.12, 21(b); *Moore v. State*, 605 S.W.2d 924, 926 (Tex. Crim. App. 1980); *Leach v. State*, 170 S.W.3d 669, 672 (Tex. App.—Fort Worth 2005, pet. ref'd)).

"In a community supervision revocation hearing, an abuse of discretion occurs when the trial judge's decision was so clearly wrong as to lie outside that zone within which reasonable persons might disagree." *Wilkins v. State*, 279 S.W.3d 701, 703–04 (Tex. App.—Amarillo 2007, no pet.); *Brumbalow v. State*, 933 S.W.2d 298, 300 (Tex. App.—Waco 1996, writ ref'd). "[O]ne sufficient ground for revocation will support the court's order to revoke" community supervision. *Moore v. State*, 605 S.W.2d 924, 926 (Tex. Crim. App. 1980).

### 2. Analysis

Condition one of appellant's community-supervision order required him to "[c]ommit no offense against the laws of this State. . . ." The motion to revoke alleged, in relevant part, that appellant on or about August 14, 2011, "intentionally, knowingly, and recklessly cause[d] bodily injury to another person, namely Shirry Zachary, a member of Defendant's family and household, . . . by hitting [Shirry Zachary] with his hand and by pushing [Shirry Zachary] with his hand, . . . in violation of Condition (1) of Defendant's Deferred Adjudication order [sic]."

The evidence showed appellant, who is Zachary's grandson and a member of her household, on or about August 14, 2011, shoved Zachary and body-slammed her, causing her pain. When the prosecutor asked her, "You told Officer Mouton that he [appellant] yelled at you, that he punched you in the stomach, that he slammed you into a wall, that you had back pain and skin abrasions as a result of that assault[,]" she said, "No, I did not." However, because the trial court is the sole judge of the credibility of the

9

witnesses and the weight given to their testimony, the trial court could have decided to believe that Zachary told Officer Mouton the truth about what appellant did to her. In addition, Officer Mouton's affidavit in support of appellant's arrest warrant stated, in relevant part, the assault occurred after appellant pulled covers off of Zachary while she was asleep in bed. When she went to retrieve her covers, appellant "punched her in the stomach with a closed fist. She was also grabbed around the torso, picked up and thrown to the ground. The complainant suffered physical back pain and minor skin abrasion as a direct result of this intentional assault on her."

After reviewing the evidence in the light most favorable to the trial court's ruling, we conclude the State proved, by a preponderance of the evidence, that appellant violated condition one of his community-supervision order. Therefore, we hold the trial court did not abuse its discretion by revoking appellant's community supervision. Issue three is overruled.

## III. CONCLUSION

The judgment of the trial court is affirmed.


ROSE VELA
Justice


Do not publish. TEX. R. APP. P. 47.2(b).

Delivered and filed the
12th day of July, 2012.

10